John McWILLIAMS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18925.

United States Court of Appeals Eighth Circuit.

May 1, 1968.

Rehearing Denied May 27, 1968.

Norman S. London, St. Louis, Mo., for appellant; Lawrence Lee, St. Louis, Mo., on the brief.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., on the brief.

Before MATTHES, GIBSON and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from a judgment of conviction entered upon jury verdicts finding the appellant guilty of the unlawful purchase and sale of heroin in vio-

lation of 26 U.S.C. §§ 4704(a), 4705(a), respectively. Counts I and III of the indictment charged the appellant with the purchase of heroin on March 7, 1967 and March 8, 1967, respectively. Counts II and IV alleged that he sold the heroin on the same dates.

Appellant does not challenge the sufficiency of the evidence to sustain the verdicts. He does, however, contend that the court erred in denying his motion for judgment of acquittal on the ground that the evidence established entrapment as a matter of law. Additionally, he asserts several procedural and substantive errors which allegedly deprived him of a fair trial. In view of the posture of the case a brief resume of the uncontradicted evidence will suffice.

The course pursued by the government in constructing its case followed a pattern frequently found in narcotic cases. An informer, Miss Kimberly Robinson, in cooperation with narcotic agents Richard M. Patch and Dan C. Hoerner, entered into a narcotic purchase arrangement under their surveillance.

*Evidence Germane to Counts I and II.*

Following a telephone conversation on the night of March 6, 1967 between the informer and appellant, monitored by Agent Patch with the consent of the informer, the appellant appeared at room 221 in the Diplomat Motel, St. Louis, Missouri, which was occupied by Miss Robinson. Prior to the appellant's arrival Agent Patch had placed $50.00 on a table in the room. Miss Robinson testified that appellant communicated with some person by telephone and asked that party to send Marian Gray over with the "stuff." After this call Marian Gray came to the room and delivered five capsules wrapped in aluminum foil to the appellant, who placed them on the table. He took $35.00 out of the $50.00 and de-

parted shortly thereafter. During his stay in the room the informer placed another order for heroin which appellant promised to deliver. The entire transaction was consummated in the early morning hours of March 7th. All of the events that transpired as well as the conversations between the informer and appellant were witnessed and overheard by the agents who were stationed in an adjoining room. After appellant's departure the agents immediately took possession of the five capsules which were untouched by the informer.

*Evidence Germane to Counts III and IV.*

The events relating to the March 8th offenses were substantially similar to those of March 6th and 7th. Again, as the result of communications between the informer and appellant, the latter, through an emissary, delivered six capsules to Miss Robinson in room 221. A total of $23.00 furnished by the agents was paid for this contraband. As before, all of the events were observed by the agents from the adjoining room.

The heroin seized on both dates was sealed, initialed, and forwarded to a government chemist in Chicago. The latter's testimony at trial established that the capsules contained a quantity of heroin known as hydrochloride.

Appellant offered no evidence to exculpate himself. His retained attorney, skilled in the defense of criminal cases, launched a vigorous attack upon the character of Miss Robinson in an attempt to completely discredit her testimony.[1]

**I.**

The main thrust of appellant's attack on the validity of his conviction centers around the district court's denial of his motions for continuance and change of venue, spawned by certain pre-trial adverse publicity.

---

1. Miss Robinson admitted that she had engaged in prostitution, had been arrested several times, was living with a man to whom she was not married (referred to as her common-law husband), and had used numerous aliases. Although she had denied selling narcotics, three witnesses for appellant testified they had purchased narcotics from her. Manifestly, the informer was not a paragon of virtue but the jury apparently credited her testimony. Her testimony was corroborated in all essentials by agents Patch and Hoerner.

The attendant publicity, which appellant contends deprived him of a fair trial, involves various newspaper articles and radio and television broadcasts concerning an alleged attempt on the life of the government witness, Miss Robinson. The articles and scripts characterize appellant as the "kingpin of St. Louis heroin dealers" and indicate that the purported assault on Miss Robinson was perpetrated at his direction. Appellant does not claim that the jurors were actually prejudiced by reason of exposure to the news coverage. Rather he argues that these accounts which appeared in the news media between June 20 and June 23, 1967, some three to six days prior to trial, so permeated and pervaded the atmosphere of the community as to inherently prejudice his right to an impartial jury. We disagree.

■ Despite appellant's suggestions to the contrary we do not believe that the pre-trial publicity in the case at bar even remotely resembles the magnitude of prejudicial publicity recently condemned by the Supreme Court. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). We are cognizant that neither a showing of prejudice nor actual exposure of individual members of the jury panel to adverse publicity is required for reversal where outside influences have so infiltrated the community at large as to render the existence of community prejudice against the defendant highly probable.

While the Supreme Court has sustained a broad challenge to the validity of criminal convictions occurring in an atmosphere of pervasive publicity, the circumstances in these cases giving rise to the probability of prejudice were held to be "inherently suspect." Estes v. State of Texas, 381 U.S. 532, 544, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). See, e. g., Sheppard v. Maxwell, supra (exposure of the jury to highly publicized and prejudicial information outside the courtroom and disruptive influences inside the courtroom); Estes v. State of Texas, supra (extensive televising and broadcasting of pre-trial hearing and portions of defend-

ant's trial); Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed. 2d 663 (1963) (televised interview and interrogation of the defendant by the sheriff, in which the former confessed his perpetration of a bank robbery, kidnapping and murder). Cf. Turner v. State of Louisiana, 379 U.S. 466, 85 S. Ct. 546, 13 L.Ed.2d 424 (1965) (testimony of two deputy sheriffs, key government witnesses, who also served as custodians of the jury); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (expression by two-thirds of the jurors of a sentiment of partiality against the accused in an atmosphere of intensive community prejudice, and extensive newspaper dissemination throughout a small Indiana county of defendant's prior criminal record, police line-up identification, lie detector test, negotiations with the prosecutor, and confessions to similar crimes).

■ Absent inherently prejudicial publicity which has so saturated the community as to have a probable impact upon the prospective jurors, there must be some showing of a connection between the publicity generated by the news articles, radio and television broadcasts and the existence of actual jury prejudice. See, e. g., Malone v. Crouse, 380 F.2d 741 (10th Cir. 1967); United States v. McElrath, 377 F.2d 508 (6th Cir. 1967); Welch v. United States, 371 F.2d 287 (10th Cir. 1966), cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed. 303 (1966), where the publicity which focused on the defendant, a former justice of the Oklahoma Supreme Court, reached widespread proportions and continued during the actual trial; United States v. Andreadis, 366 F.2d 423 (2d Cir. 1966), cert. denied, 385 U.S. 1001, 87 S. Ct. 703, 17 L.Ed.2d 541 (1967); United States v. Armone, 363 F.2d 385 (2d Cir. 1966), cert. denied, Viscardi v. U. S., 385 U.S. 957, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966).

In Estes v. State of Texas, supra, the Supreme Court recognized the rule that absent appropriate circumstances the courts must carefully examine the facts

to determine whether actual prejudice has resulted:

"It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." 381 U.S. at 542–543, 85 S.Ct. at 1632–1633.

See, e. g., Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

■ Appellant's claim of prejudice is readily dissipated when considered in light of the means adopted by the district court to shield the jury from exposure to outside influences. Although the publicity occurred only a few days prior to the commencement of trial, the district court had previously admonished the prospective jurors to avoid all contact with any publicity affecting the central figures in the case. Appellant's counsel, moreover, was afforded a full opportunity on voir dire to analyze the potential, prejudicial impact which the publicity may have had.

This examination revealed that only two of the twenty-eight prospective jurors had casually observed one of the news articles. Each had refrained, however, from reading its contents. Both were excluded from the trial panel.

Considering the totality of the circumstances, we reject the claim of error in the denial of appellant's motions for continuance and change of venue. We believe that the jury was impartial and adhered to its sworn duty to base its verdict upon the evidence adduced and the law as expounded in the court's instructions.

## II.

The next claim of error is focused upon the rejection of evidence proferred by appellant for the purpose of showing that Miss Robinson had indirectly received some consideration for her efforts in cooperating with and testifying for the government.

■ The parties directly involved in the incident giving rise to this question are Andrew Lee Lyles (Miss Robinson's common-law husband), Agent Patch and an assistant circuit attorney of St. Louis, Missouri. One or more indictments had been returned by a state grand jury in St. Louis against Lyles.[2] From the offer of proof made by appellant's counsel we are advised that the indictments against Lyles were not filed. An effort was made to elicit testimony from the assistant circuit attorney that as the result of a conversation between him and Agent Patch the indictments were not filed in order to obtain the cooperation of Miss Robinson in the case at bar. The court, upon objection by the government, declined to admit the evidence on the basis that appellant had not laid a proper foundation showing that Miss Robinson had been apprised of the purported arrangements between Agent Patch and the circuit attorney's office. Our analysis leads us to conclude that the exclusion of the evidence, even if error, did not affect the substantial rights of appellant. See Rule 52(a), Federal Rules of Criminal Procedure.

First, both the return of the state indictments against Lyles and Patch's activities to delay their filing, occurred after the offenses in issue here had been committed. Therefore, Miss Robinson's assistance in procuring the purchase of narcotics from appellant on March 7th and March 8th, respectively, could not have been motivated or influenced by the subsequent events relating to Lyles. Inasmuch as these events did occur, however, prior to trial, appellant urges that he was entitled to all evidence legitimately bearing upon the question of the veracity of a witness for the government. We have no quarrel with this principle of law, but in view of the cumulative nature of the rejected evidence, its denial

2. Although the record is somewhat hazy we are led to believe that Lyles was charged with unlawful possession of narcotics and assault.

can hardly be said to have prejudiced the appellant.

Secondly, the record does not clearly indicate whether Miss Robinson knew of any activity designed to discourage the prosecution of Lyles. She categorically denied knowledge of a "promise to assist [her] common-law husband with any difficulties that he might have had with the law." Agent Patch's testimony as to this aspect is equivocal. In response to an inquiry on cross-examination as to whether he had informed Miss Robinson of his contacts with the office of the circuit attorney, he stated: "I don't recall, but I imagine I did, after; yes."

Thirdly, assuming Miss Robinson's knowledge of such an arrangement, we nonetheless fail to perceive prejudicial error in the denial of this evidence. Agent Patch's intercession in behalf of Lyles was fully developed in Patch's cross-examination.[3]

A realistic appraisal of the record in totality eliminates any question concerning the propriety of the court's ruling. The evidence which appellant unsuccessfully sought to elicit would have been of little, if any, probative value for the purpose of impeaching or discrediting Miss Robinson's testimony. The jury was fully aware of her unsavory character and her questionable relationship to Lyles. We cannot bring ourselves to believe that the admission of the evidence in question would have in any respect tipped the scales in favor of appellant, particularly in view of the overwhelming, uncontradicted evidence of guilt.

### III.

Appellant submits that the court committed reversible error in overruling his motion for judgment of acquittal on the ground that the defense of entrapment had been established as a matter of law. He also contends the court improperly instructed the jury on the issue of entrapment. We find these allegations of error completely lacking in merit. We seriously doubt whether there was sufficient evidence in the record to make the defense a submissible factual issue for the jury. In any event there is certainly no basis for holding that as a matter of law appellant was entrapped into committing the offenses for which he was convicted. Cf. Kibby v. United States, 372 F.2d 598 (8th Cir. 1967), cert. denied, 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993 (1967), in which we similarly rejected the defense of entrapment predicated on a factual situation analogous to the present case. Our discussion in *Kibby*, in which we reviewed the principles outlined in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), in relation to the factual setting in that case is apropos here:

"As Government informer Brown did no more than inform the defendants that he was a willing buyer, in the words of the Supreme Court he was merely affording an opportunity and facility for the commission of the offense. The criminal conduct in this case was clearly the creative activity of the defendants and not of the law enforcement officers. Defendants were not lured by repeated and persistent solicitation, as in *Sorrells,* nor were they innocent parties, beguiled into committing crimes that they would otherwise not have considered,

---

**3.** Patch readily admitted conversing with the assistant circuit attorney. He testified: "I told him that we'd appreciate any assistance that the circuit attorney's office would do in regard to the pending case against him [Lyles]." He also stated:

"* * * to the best of my knowledge, I told the circuit attorney that Lyles' girl friend or common-law wife, or whatever you may call it, has assisted the government in a case that is now pending."

* * * * *

"I just told him [Mr. Darst—the assistant circuit attorney] that Kimberly Robinson was a witness in a government case, and would appreciate any help that his office could do."

as in *Sherman*. The evidence strongly indicates that defendants were in the business of purveying narcotics, possessed narcotics and were ready to sell to anyone when they thought they could do so with impunity. The Government merely provided a stage upon which the offenders were free to act if they were so inclined. Once having performed, they are not to be heard to argue that they were entrapped." 372 F.2d at 602–603.

See also Rowell v. United States, 368 F. 2d 957 (8th Cir. 1966), cert. denied, 386 U.S. 1009, 87 S.Ct. 1353, 18 L.Ed.2d 438 (1967); Cross v. United States, 347 F.2d 327 (8th Cir. 1965).

 We find, moreover, no error in the court's instruction relating to the defense of entrapment. Not only does the instruction properly set forth all the constituent elements of the defense in clear and understandable language, but also that portion of it, which appellant finds objectionable, is encompassed in his own "requested instruction No. H."

### IV.

Appellant alleges error in the district court's refusal to grant a mistrial following certain remarks by the government informer, Miss Robinson, on direct examination. He contends this testimony improperly placed his character in issue in the case. The record reveals the following questions and answers:

"Q. What, if anything, did he do?

"A. When he came to the room?

"Q. Yes. After he came to the room [room 221 of the Diplomat Motel].

"A. The first thing he did was to take a gun from beneath his belt."

Immediately after this remark had been volunteered by the witness, the district court, upon objection, excluded the testimony and instructed the jury to completely disregard it. Despite the court's action, appellant nonetheless contends that this remark was so highly prejudicial and inflammatory as to warrant the granting of a mistrial.

 We agree that the witness's remark was objectionable. In view of the corrective measures taken by the court to dissipate the objectionable matter, however, we do not believe it was so prejudicial as to be deserving of a mistrial. There is no indication from the record that the government sought to elicit testimony of this nature. Certainly where, as here, the evidence of guilt is clear and convincing and the improper testimony has been stricken from the jury's consideration, the refusal to declare a mistrial does not constitute an abuse of discretion. Cf. United States v. Phillips, 375 F.2d 75, 81 (7th Cir. 1967), cert. denied, 389 U.S. 834, 88 S. Ct. 40, 19 L.Ed.2d 95 (1967); Gresham v. United States, 374 F.2d 389–390 (8th Cir. 1967); Evenson v. United States, 316 F.2d 94, 95–96 (8th Cir. 1963).

### V.

 Complaint is made of the admission into evidence of the capsules of heroin. Appellant argues that they were not properly identified and that the "chain of custody" was not established. We find this contention wholly lacking in substance. We regard the evidence sufficient to support the finding, inherent in the verdicts, that the capsules in evidence were the same ones delivered by appellant and seized by the agents. The chain of custody was proved by the uncontradicted testimony of the participating agents and the chemist who made the analysis. See West v. United States, 359 F.2d 50 (8th Cir. 1966).

### VI.

 Appellant's belated attack on the indictment, grounded on its failure to name the purchaser and seller of the narcotics, must also fail. See Aggers v. United States, 366 F.2d 744, 746 (8th Cir. 1966), cert. denied, Coates v. U. S., 385 U.S. 1010, 87 S.Ct. 719, 17 L.Ed.2d 548 (1967), where we pointed out that the Seventh Circuit, sitting en banc, in

Collins v. Markley, 346 F.2d 230 (7th Cir. 1965), cert. denied, 382 U.S. 946, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965), determined that Lauer v. United States, 320 F.2d 187 (7th Cir. 1963), had been wrongly decided.

## VII.

■ The district court imposed a sentence of twenty-five years and levied a fine of $8,000.00.[4] Appellant asserts the sentences are so excessive that they constitute cruel and unusual punishment in violation of the Eighth Amendment of the Constitution. He charges that the sentences were designed to incarcerate appellant without possibility of parole for twenty-five years.[5] Appellant also suggests that the sentences were induced in part by the attempt to intimidate witness Kimberly Robinson. We are unable, with assurance, to ascertain all of the motivating factors incident to the punishment. We do know, however, that appellant had previously been convicted of a felony (mail theft) in 1957.

Be that as it may, the contention must be rejected. We considered the Eighth Amendment proscription in Coon v. United States, 360 F.2d 550 (8th Cir. 1966), cert. denied, 385 U.S. 873, 87 S. Ct. 145, 17 L.Ed.2d 100 (1966) and observed:

"The action of Congress in fixing punishment for crime is, of course, subject to the constitutional requirement that the penalty may not be cruel and unusual; i. e., so manifestly disproportionate to the seriousness of the offense or of such a nature that it shocks the conscience and sense of justice. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The courts, however, have

been reluctant to interfere with legislative judgment and discretion unless the penalty prescribed is clearly and manifestly cruel and unusual. Bailey v. United States, 74 F.2d 451 (10 Cir. 1934)." 360 F.2d at 555.

This contention has also been considered and rejected by this Court in other narcotic cases. See Stewart v. United States, 325 F.2d 745, 746 (8th Cir. 1964), cert. denied, 377 U.S. 937, 84 S.Ct. 1344, 12 L.Ed.2d 301 (1964), where, as here, the defendant urged that a non-parolable sentence constituted cruel and unusual punishment. Our holding in that case, documented by authority from other circuits, cogently demonstrated the reason why offenders of certain narcotic statutes are not eligible for parole. See also Smith v. United States, 273 F.2d 462, 467–468 (10th Cir. 1959), cert. denied, 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960); Black v. United States, 269 F.2d 38, 43 (9th Cir. 1959), cert. denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357 (1960).

■ Since the sentences here are within the statutory limits, we will not intercede to review their propriety.[6] Cf. Welch v. United States, supra, 371 F.2d at 294.

■ Finally, appellant submits that an appraisal of the total record compels the holding that he was denied a fair trial and thereby deprived of due process of law in contravention of the Fifth Amendment. We reach the opposite conclusion. Our canvass of the record convinces us that appellant received a fair trial and that each count was supported by substantial evidence. Perhaps the proceedings were lacking in perfection. Few trials are completely flawless. The

---

4. The sentences imposed were ten years on Counts I and III, to run concurrently, twenty years on Counts II and IV to run and terminate concurrently with each other. The terms of twenty years are to begin five years after the start of the concurrent terms imposed under Counts I and III, for an aggregate of twenty-five years. A $2,000.00 fine was imposed on each count.

5. The offenses charged in Counts I and III (purchase of narcotics) are parolable. The Count II and IV offenses (sale of narcotics) are not. See 26 U.S.C. § 7237.

6. The maximum sentence is ten years on each of the purchase counts and twenty years on each of the sale counts for a total of sixty years.

dominant question, however, is whether an error occurred which affected the substantive rights of the accused. We can say with fair assurance, after pondering all that has happened, that the jury was not influenced by the asserted errors. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The judgment of conviction is affirmed.