[Crim. No. 15193. Second Dist., Div. Five. Sept. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
G. W. JOINES, Defendant and Appellant.

## Counsel

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward Duddy, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**REPPY, J.**—In a jury trial, severed from that of codefendant Houtz, defendant Joines, was found guilty of first degree robbery. (Pen. Code, § 211.) He was sentenced to the state prison. He appeals from the judgment and from an order denying motion for new trial. Read in the light most favorable to the verdict, the record amply supports the implied finding that defendant participated in an early-morning robbery of a service station in Long Beach, California.

Defendant contends that the trial court erred prejudicially in (1): denying what, in effect, was a motion to suppress evidence (a gun, some bullets,

some clothing, and some currency and a check) on the ground that it had been obtained as the result of an illegal arrest and search; (2) failing to give an instruction that a third participant in the robbery, a juvenile, who was not being prosecuted in superior court, was an accomplice as a matter of law; (3) refusing to give an instruction that the mere presence of the accused in the company of admitted conspirators is insufficient proof to establish that he was a member of the conspiracy; (4) allowing the preliminary hearing testimony of the victim to be read to the jury, because there was a denial of the constitutional right of confrontation due to the circumstance that cross-examination was inadequate. Defendant also contends that he did not have adequate legal representation because his lawyer did not call a witness whom defendant wanted to have testify.

Our consideration of contention (4) led us to request counsel to consider the problem of the existence of an undeniable right on the part of defendant to object to the admission of the testimony of the victim contained in the transcript of the preliminary hearing because in actuality he was not proved to have been legally unavailable under the rule in *Barber* v. *Page,* 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], or even under section 240 of the Evidence Code. Our study of this point has brought us to the determination that the judgment must be reversed. However, on retrial the arrest and search problem (contention (1)) will still be encountered. Since through its examination the facts are divulged, we discuss it first.

*The Arrest and Search.*

■ Although neither the trial court nor counsel specifically labeled the motion, heard during the course of trial in the absence of the jury, as one to suppress evidence under Penal Code section 1538.5, this is what it was. We gauge the validity of the judge's denial on the basis of the evidence put before him at that session.

The suppression hearing evidence consisted of the testimony of Officer Whinery.[1] An examination of that evidence satisfies us that the officers had probable cause to arrest the suspects (including defendant) and to search their car when they did and that, therefore, the trial judge did not err in denying the motion to suppress. We list the various circumstances combining to allow a man of ordinary prudence to conscientiously entertain an honest and strong suspicion that the suspects had committed the reported robbery (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d

[1]Some of the testimony of the companion officer (Roberson, who testified at the preliminary hearing) was read from the transcript of the preliminary hearing by defense counsel in an apparent effort to weaken Officer Whinery's credibility in the mind of the judge. What appeared to be partial inconsistencies in their recollections related only to insignificant aspects of the occurrence and were readily reconciled.

577]; Kolbreck and Porter, The Law of Arrest, Search and Seizure (1st ed. 1965) p. 152), thus providing probable cause to arrest without a warrant.

At 4 a.m. Long Beach police officers Whinery and Roberson, who were in uniform and in a marked police vehicle, received a radio transmission that an armed robbery had just occurred at a service station only two and one-half miles from their location. A description was given of two suspects who had fled on foot, one, a white male, 6 feet 1 inch tall, with long dark hair, the other, a white male, 5 feet 9 inches tall, with shortish brown curly hair. The officers proceeded to a nearby intersection, a vantage point which permitted them to survey the street leading from the crime scene to a freeway entrance, a logical escape route. A Chevrolet appeared, coming from the direction of the robbery and heading in the direction of the freeway. It stopped for a signal light close to the police car. The driver looked to be a juvenile,[2] an unusual circumstance considering the hour. Two passengers, one in the front seat and one in the rear, appeared quite a bit older. They fit the description of the two suspects given in the radio broadcast. The rear passenger had very dark and very long hair. No other cars were in the area. The fact that there were two persons fitting descriptions given for the two suspects narrowed the chance of coincidence. That there was an automobile with an apparent "get-away" driver was to be expected even though it had been reported that the suspects had fled the crime scene on foot.

The occupants of the Chevrolet were excessively attentive to the officers. From a point 40 feet back of, and up to and across, the intersection they stared intently at the officers. Officer Whinery characterized it as just about "eyeball contact" and explained that in his experience people who had shown that much attention to him as a police officer turned out to have been up to something.

Despite the circumstance that its occupants had obviously noted that they were being closely scrutinized by police officers, the Chevrolet started out from the intersection in a rapid manner, got up to about 60 miles per hour in a 40-mile zone while in view of the officers and continued to accelerate as it passed out of sight. Officer Whinery considered the speed "a good ticket." The officers followed in pursuit at high velocity. When they got up to within about 150 feet of the rear of the Chevrolet, they turned on their overhead red light and spotlights. Officer Whinery noticed the driver looking in his rearview mirror, saw the right rear passenger look at the police unit and then turn back and speak to the two passengers in front. He then saw the right front passenger turn and look back at the officers. The driver then slowed to 35 miles per hour, continued for about a quarter of a mile

---

[2]He was 17 years old.

of roadway with unobstructed shoulders (permitting earlier stopping), pulled over and stopped. During this time it appeared to the officers that the rear passenger shifted some clothing from one side of his lap to the other.

The driver got out and came to the rear of the Chevrolet to meet Officer Whinery. This action was not particularly unusual, but if it had not been taken the officer would have come up beside the Chevrolet where he could have viewed the interior and observed the passengers close up.

The juvenile driver said that the car belonged to his mother. When Officer Whinery asked for the registration, he told the front passenger to look for it in the glove compartment. As the latter probed the compartment with his right hand, he shielded the interior with his left hand. When he moved his right hand over to the left portion of the compartment, he slid his other hand across to the other side of the compartment. Nonetheless, the officer caught sight of several shotgun shells. No registration was produced.

Officer Whinery noticed that the rear passenger had a bandage on his hand. He got an additional radio description that the suspect with the long dark hair had a bandage on his left hand. This, of course, was a strong identification feature to be added to all the other factors taken into consideration by the officers. At this point the passengers were directed to step out of the car. They did and were arrested on suspicion of robbery.[3] The implied finding of the trial court that there was probable cause to arrest and search (which led to his denial of the motion to suppress) finds ample support in this record. Defendant relies on *People* v. *Gibson,* 220 Cal.App.2d 15 [33 Cal.Rptr. 775]. However, a comparison of the total fact picture in the two cases indicates that *Gibson* is weaker in probable cause factors and so is properly distinguishable.

To complete the evidence picture we add the following. Immediately after making the arrests, the officers searched the car with the particular intent of locating the weapon reported to have been used in the robbery. A revolver was found underneath a sweater in the back seat. A box of ammunition for the revolver (in addition to the shotgun shells) was found in the glove compartment. Later a search of Houtz' clothing produced currency

---

[3]Note that despite Officer Whinery's feeling that the driver could have been ticketed for speeding, the car was not stopped to make an arrest for the moving violation (compare *People* v. *Molarius,* 146 Cal.App.2d 129, 130-131 [303 P.2d 350]; see also *People* v. *Gale,* 46 Cal.2d 253, 256-257 [294 P.2d 13]) but to conduct an investigation, and if warranted, make an arrest for the robbery. Thus an incidental search of the entire car for the fruits of that robbery was justifiable. (*Carroll* v. *United States,* 267 U.S. 132, 153 [69 L.Ed. 543, 551, 45 S.Ct. 280, 39 A.L.R. 790]; *People* v. *Webb,* 66 Cal.2d 107, 111-112 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Burke,* 61 Cal.2d 575, 580 [39 Cal.Rptr. 531, 394 P.2d 67].) No contention to the contrary is made by defendant.

and a personal check which corresponded to items taken from the victim in the robbery. These were the items of evidence sought to be suppressed.

*Nonavailability of Victim Witness.*

■ At the outset of the trial, on Friday, the 26th of January, 1968, when it was indicated that the prosecutor desired to present the story of the victim by means of his testimony given at the preliminary hearing, defense counsel made the following statement: "At this time I would offer in view of a discussion with the People, that the witness who is the so-called victim in this case, Robert Richard Fellmy, is unavailable. I offer to stipulate as for the definition of unavailable under section 240 of the Evidence Code."

The prosecutor accepted the stipulation. Nonetheless defense counsel indicated that he was going to object to having the testimony of Fellmy read, because, in his estimation, the cross-examination of the witness at the preliminary hearing was so inadequate as to negate true confrontation, citing *People* v. *Gibbs,* 255 Cal.App.2d 739 [63 Cal.Rptr. 471]. The trial judge, in allowing the former testimony to be read into the record stressed that the cross-examination of the witness was complete enough under the circumstances to be allowed into evidence at trial as an exception to the confrontation clause of the Sixth Amendment. The adequacy of the cross-examination does not become significant to us, because defendant, under section 240 and under the concept of *Barber* v. *Page, supra,* 390 U.S. 719, was in a position, if he had known the law, to prevent the admission of the preliminary hearing testimony in any event.[4]

The following colloquy with respect to the whereabouts of Fellmy took place:

"BRODSKY [defense counsel]: I understand that the witness is somewhere in Pennsylvania. There is also a possibility that over the weekend . . . he might return.

"SELDEEN [prosecutor]: [T]he witness is . . . presently in Michigan. We are telephoning now . . . to see if we can . . . get him back by Monday. I doubt it. But we will do our best."

---

[4]*Barber* v. *Page, supra,* 390 U.S. 719, dealt with this precise question and noted: "While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case." (Pp. 725-726 [20 L.Ed.2d at pp. 260-261].)

Subdivision (a) of section 1291 of the Evidence Code was in effect on January 26, 1968, and provides in part that: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness. . . ."

On that date section 240 of the Evidence Code was in effect and it reads in part as follows: " '[U]navailable as a witness' means that the declarant is: . . . (4) Absent from the hearing and the court is unable to compel his attendance by its process; or (5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process."

At oral argument it was made known to this court that trial counsel for defendant, and it seems also the prosecutor, thought that the mere absence of the witness from the State of California constituted unavailability under section 240. They evidently felt that "court process" meant "court process" within the State of California. Actually, with respect to those states which had the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings,[5] or its equivalent (and Michigan had its equivalent[6]), the court's process included interstate process through such mutual statutory provisions. (*People* v. *Nieto,* 268 Cal.App.2d 231, 235-241 [73 Cal.Rptr. 844]; *People* v. *Woods,* 265 Cal.App.2d 712, 714-717 [71 Cal.Rptr. 583]; see also *People* v. *Casarez,* 263 Cal.App.2d 130, 133 [69 Cal.Rptr. 187].)

Actually defense counsel, although neither he nor the prosecutor realized it, was stipulating that it could be considered that the prosecution had made an effort to obtain Fellmy through interstate process and had been unable to do so because the Michigan court,[7] for some reason, would not issue the requisite Michigan subpoena. It appears from the explanation made at oral argument concerning the legal beliefs of respective

---

[5]Penal Code, sections 1334 et seq.

[6]The Attorney General's office has provided us with a copy of the Michigan law, section 767.80 of its Code of Criminal Procedure. Under this, the judge of the other state (California) is to request that a witness residing in Michigan be required to attend as a witness in a criminal action in California, supporting his request with certain required information. The request is presented to a court of record in Michigan having jurisdiction in the county where the witness is found. After giving the witness an opportunity to be heard in opposition to the request, if the Michigan judge believes the presence of the witness in the other state is material and necessary, and will not cause undue hardship to the witness, and that he will be protected from civil or criminal process while in the state, the Michigan judge may order the clerk of his court to issue a subpoena, etc.

[7]It would be expected that the local superior court would have considered the witness material (see *People* v. *Cavanaugh,* 69 Cal.2d 262, 266 [70 Cal.Rptr. 438, 444 P.2d 110]) and acted on a prosecution request for a certificate to Michigan. (See fn. 6, *ante.*)

trial counsel and from an examination of the superior court file that the prosecution actually did not make any effort to compel the attendance of Fellmy by interstate process.

The attorney did not realize that the concept contained in section 240 for procurement of attendance of the witness by the court's process meant by interstate as well as intrastate process. This concept is not absolutely clear from the face of the statute, since nothing more descriptive than the term "process" is employed, especially when it is considered that the process of California courts consists of the issuance of a certificate to the foreign court and that it is the latter's subpoena process which is actually employed.

However, the decision in *People* v. *Woods* (1968) *supra,* 265 Cal.App.2d 712, 715-717, contains this interpretation, and the decision in *People* v. *Nieto* (1968) *supra,* 268 Cal.App.2d 231, 235 et seq., confirms it.[8] We accept this construction as the proper one at the time of the trial of the instant case and now, although the decisions had not come down when the instant case was being tried in January 1968. Moreover the yet, but soon to be promulgated rule of *Barber* v. *Page, supra,* 390 U.S. 719, made retroactive in *Berger* v. *California,* 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], that even though the procurement by interstate process is not possible, the prosecution must use reasonable diligence to secure the absent witness on a voluntary basis, has now become available to defendant.

If defense counsel had known of the construction of section 240 and of the prosecution's failure to attempt interstate process, he could have blocked the introduction of Fellmy's testimony given at the preliminary hearing.[9] We do not know if this would have resulted in the prosecution, by more persuasive efforts, getting the witness to come to court voluntarily, or seeking and obtaining a continuance so that subpoena by interstate process could be attempted.

Although we might remand the case to the trial court for a hearing to determine if the prosecution's efforts to obtain the presence of the witness voluntarily could be categorized as diligent, since it seems clear

---

[8]*People* v. *Casarez, supra,* 263 Cal.App.2d 130 was tried prior to the effective date of section 240, so it is not directly pertinent.

[9]This would have seriously jeopardized the prosecution's case since what occurred at the scene fundamentally was established through this part of the evidence. The juvenile testified as to the plans and as to certain aspects of the getaway. Physical evidence did not complete the story. We cannot speculate as to what post-crime evidence descriptive of the aftermath condition of the service station might have been available. Fellmy's testimony was a substantial and important part of the case. (See *People* v. *Nieto, supra,* 268 Cal.App.2d 231, 240.)

that the prosecution did not attempt the use of interstate process, and since this was required either under section 240 or as a part of reasonable diligence under *Barber,* there would be no point in such an inquiry. Rather, the judgment should be reversed now so that retrial can commence that much sooner.

Since if counsel had anticipated the *Woods-Nieto* construction of section 240 or the holding in *Barber* v. *Page, supra* (and his failure to do so is not to be held against him),[10] and the trial court had as well, counsel's objection would have resulted in keeping out the victim's preliminary hearing testimony (see *In re Montgomery,* 2 Cal.3d 863 [87 Cal.Rptr. 695, 471 P.2d 15]), unavoidably the case will have to be retried.

Three additional points remain.

### The Failure to Give Accomplice Instructions.

The People concede that the juvenile was an accomplice as a matter of law and that an instruction to that effect should have been given. This defect can be eliminated on retrial.

### Refusal to Give the Proffered Conspiracy Instruction.[11]

The testimony of the juvenile pointed to a conspiracy.[12] He testified on direct examination that the three of them discussed the robbery prior to going to the service station. Then, in response to questions put by the trial judge himself, he testified that Houtz and Joines discussed who was going to go into the service station (at first the juvenile, but changed to Houtz and Joines), and who would have the gun (Houtz), but not what specific parts would be played. ■ Even though a conspiracy is not

---

[10]The lack of perspicacity on the part of respective counsel, in light of the absence of explicitness of the statute and of an appellate interpretation at time of trial, cannot be classified, as a matter of law, as ineffective representation of the type represented by *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].

[11]"Evidence that a person was in the company of . . . one or more other persons . . . proved to have been members of a criminal conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy." (CALJIC No. 937-A (1958))

[12]There is evidence of considerable strength indicating that defendant was an aider and abettor independent of the conspiracy testimony of the juvenile. He entered the service station and got change to, and did, make a telephone call. This presented a reason for the appearance of defendant and Houtz at that late hour and was calculated to place the attendant off guard and to divert his attention. Defendant promptly left with Houtz in the getaway car. He joined in the inculpatory conduct when the car was encountered by the police unit. Most damaging of all, the telephone receiver and wire were found to be missing immediately after the robbery, and the inference is very strong that defendant had yanked it off to prevent a telephone report of the robbery. The juvenile testified that the receiver had been thrown from the car. It is to be inferred that defendant did this.

charged (and one was not charged in this case) evidence of one can be used to prove the commission of the substantive crime charged and complicity therein (*People* v. *Lopez,* 60 Cal.2d 223, 250 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Pike,* 58 Cal.2d 70, 88 [22 Cal.Rptr. 664, 372 P.2d 656]); and it is proper, and, indeed, in some cases requisite, to instruct on the subject (*People* v. *Teale,* 63 Cal.2d 178, 187-188 [45 Cal.Rptr. 729, 404 P.2d 209] reversed on other grounds, *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People* v. *Davis,* 48 Cal.2d 241, 250 [309 P.2d 1]; *People* v. *Tanner,* 3 Cal.2d 279, 299 [44 P.2d 324]; *People* v. *Chapman,* 261 Cal.App.2d 149, 176 [67 Cal.Rptr. 601]; *People* v. *Bazaure,* 235 Cal.App.2d 21, 36 [44 Cal.Rptr. 831]). Such proof is certainly meaningful when a defendant, who was present at the scene of the crime, claims he did not know it was going to take place and did not participate in it. Usually the question is raised by the defense whether the prosecution is entitled to conspiracy instructions under such circumstances (see citations immediately *ante*); however, if a defendant should feel that conspiracy is in the picture, even though the prosecution does not ask for instructions on it, such defendant himself might wish instructions on the subject so that the cautionary ones could be included.

However, defendant neglected to ask for a definitional instruction. On retrial, if defendant continues to request conspiracy instructions, the matter should be reevaluated in light of the above discussion.

*Failure to Call Witness.*

■ There was no showing that the alleged witness was crucial. "Whether to call certain witness is generally a matter of trial tactics." (*People* v. *Williams,* 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008], citing cases.)

The judgment is reversed; the purported appeal from the order denying motion for new trial is dismissed.

Kaus, P. J., and Aiso, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 10, 1970. McComb, J., was of the opinion that the petition should be granted.