[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1298 
For the second time Ronald Ray Anderson was convicted of the second degree murder of Mrs. Rudene Edwards of Phenix City, Alabama. A jury set imprisonment at one hundred years and one day. His first conviction was reversed and remanded in Andersonv. State, 354 So.2d 1156 (Ala.Cr.App.), cert. denied,354 So.2d 1161 (Ala. 1977).
The testimony adduced at Anderson's second trial was essentially that presented at his first. For this reason we will treat only those facts which concern the issues raised on this appeal. Two other persons have also been convicted for Mrs. Edwards' murder. Conley v. State, 354 So.2d 1172
(Ala.Cr.App. 1977) and Austin v. State, 354 So.2d 40
(Ala.Cr.App.), cert. denied, 354 So.2d 44 (Ala. 1978).
 I
Initially Anderson contends that the trial court erred in denying his motion for a change of venue. He argues that juror assurances of impartiality are not always dispositive and contends that the allegedly inherently prejudicial nature of the material, coupled with knowledge of its wide dissemination in the community, required the granting of relief without elaborate soundings of community sentiment.
Section 15-2-20, Code of Alabama 1975, authorizes a defendant to have his trial removed to another county if he cannot receive a fair and impartial trial in the county in which the indictment is found. Gilliland v. State, 291 Ala. 89,277 So.2d 901 (1973). However the existence of widespread publicity alone does not indicate that a defendant will not get a fair trial. The law focuses on the impartiality of the trial jury. Turk v.State, 348 So.2d 878 (Ala.Cr.App. 1977); Mathis v. State,52 Ala. App. 668, 296 So.2d 755, cert. quashed, 292 Ala. 732,296 So.2d 764 (1973), cert. denied, 419 U.S. 1106, 95 S.Ct. 777,42 L.Ed.2d 802 (1975). Actual prejudice directed toward the accused resulting from the extensive publicity must be shown.Botsford v. State, 54 Ala. App. 482, 309 So.2d 835 (1974), cert. denied, 293 Ala. 745, 309 So.2d 844 (1975); Annotation, 33 A.L.R.3d 17 (1970).
On motion for a change of venue in a criminal case, the defendant has the burden of showing, to the reasonable satisfaction of the court, that a fair and impartial trial cannot be had and an unbiased verdict cannot reasonably be expected. Boutwell v. State, 279 Ala. 176, 183 So.2d 774
(1966); Godau v. State, 179 Ala. 27, 60 So. 908 (1913).
Newspaper articles, without more, are not evidence on a motion for change of venue; their effect must be shown. Beddowv. State, 39 Ala. App. 29, 96 So.2d 175 (1956), cert. denied,266 Ala. 694, 96 So.2d 178 (1957), 355 U.S. 930, 78 S.Ct. 412,2 L.Ed.2d 414 (1958).
Except in the situation where there is a showing of "inherently prejudicial publicity *Page 1299 
which has so saturated the community, as to have a probable impact upon the prospective jurors", the trial court's primary responsibility in dealing with allegedly prejudicial pretrial publicity is whether, as a result of such publicity, it is reasonably unlikely that the defendant can secure a fair and impartial trial. Sheppard v. Maxwell, 384 U.S. 333,86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas,381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Rideau v. Louisiana,373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); UnitedStates v. Jones, 542 F.2d 186 (4th Cir. 1976); McWilliams v.United States, 394 F.2d 41 (8th Cir. 1968).
In Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 2036,44 L.Ed.2d 589 (1975), the United States Supreme Court recognized that:
 "Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
 "`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" (Citations omitted)
 "At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate `the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality'."
Recently the Supreme Court affirmed the principles expressed inMurphy.
 "Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed us to no specific portions of the record, in particular the voir dire
examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected. But under Murphy, extensive knowledge in the community of neither the crimes nor the putative criminal is sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a `trial atmosphere utterly corrupted by press coverage'." Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344
(1977).
The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.
In his motion for change of venue defense counsel listed seven grounds in support of his request: (1) The "enormous amount of adverse and prejudicial publicity", (2) the newspaper articles which stated that the defendant was found guilty of the crime charged and sentenced to 125 years in the penitentiary, (3) the articles referred to the convictions and sentences of the co-defendants, (4) the articles contained accounts wherein the District Attorney labeled the defendant "garbage" and a "sadistic killer", (5) articles linked the defendant and other co-defendants with separate and distinct criminal offenses, (6) one newspaper editorially praised and commended the citizens of Russell County for their conviction of Ronald Ray Anderson, and (7) articles referring to "investigations within the Columbus Police Department and the Phenix City Police Department that serve to keep the convictions and sentence of this defendant before the public".
Here there was no showing that any prospective juror read the editorial. The District Attorney's reference to Anderson was made in his closing argument to the jury on Anderson's first trial. Generally newspaper articles which objectively report the commission of a crime, do not carry inflammatory headlines, and do not editorialize on the facts in a manner to inflame *Page 1300 
the community or create an atmosphere of prejudice are an insufficient basis on which to grant a motion for a change of venue. Gray v. State, 56 Ala. App. 131, 319 So.2d 750 (1975).
Of the fifty prospective jurors, thirty-nine admitted that they had read articles about Mrs. Edwards' murder at one time or another. However only two veniremen expressed any doubt that they would be able to return a fair and impartial verdict. Considering the answers of each prospective juror on voir dire examination we believe that the jury was impartial and adhered to its sworn duty to base its verdict upon the evidence adduced and the law as expounded by the court's instruction. Foy v.State, 43 Ala. App. 524, 194 So.2d 856 (1966); Bowen v. State,274 Ala. 66, 145 So.2d 421 (1962). The fact that jurors knew of the case did not establish that at the time of empaneling they were biased against the defendant where they swore that their knowledge would not affect their judgment. Hale v. UnitedStates, 435 F.2d 737 (5th Cir. 1970), cert. denied,402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). Also we find that the circumstances in this case giving rise to the probability of prejudice are not "inherently suspect". McWilliams, 394 F.2d 44.
 "Despite appellant's suggestions to the contrary we do not believe that the pretrial publicity in the case at bar even remotely resembles the magnitude of prejudicial publicity recently condemned by the Supreme Court. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). We are cognizant that neither a showing of prejudice nor actual exposure of individual members of the jury panel to adverse publicity is required for reversal where outside influences have so infiltrated the community at large as to render the existence of community prejudice against the defendant highly probable." McWilliams, 394 F.2d 44.
Absent inherently prejudicial publicity which has so saturated the community as to have a probable impact upon the prospective jurors, there must be some showing of a connection between the publicity generated by the news articles, radio and television broadcasts, and the existence of actual jury prejudice. McWilliams, 394 F.2d 44. The evidence before us reveals that the jury was not prejudiced against Anderson. Therefore we find no error in the refusal of the trial judge to grant the motion for a change of venue.
 II
The transcribed testimony of Deborah Vella given at Anderson's first trial was admitted into evidence at his second trial over the objection that the state had failed to prove her unavailability as a witness.
To support the claim of unavailability the state introduced a subpoena which had been mailed to Ms. Vella at 5353 Delray Drive, Columbus, Georgia. The return indicated that the witness had not been found at that location which was the address of Mrs. Sarah Rezek where Ms. Vella had been living at the time of the crime. As defense counsel specifically pointed out to the trial court, Ms. Vella testified at Anderson's first trial that she no longer lived at that address and was presently living at 1335 Spring Street in Columbus. Therefore the subpoena was utterly without value in attempting to prove that the witness was unavailable to testify.
The state also introduced an affidavit of the District Attorney of the Chattahoochee Judicial Circuit in Columbus, Georgia. In pertinent part the statement revealed that Ms. Vella was "currently incarcerated in the Muscogee County Jail (Georgia), being held under a felony criminal charge for which no bond is allowed".
This affidavit also constitutes no evidence that Ms. Vella was unavailable to testify. There was never any showing that the Georgia authorities would not release this witness into the custody of the prosecution or its agents. The trial judge appears to have reasoned that, because Ms. Vella was being held without bond, the Georgia authorities would not release her. However *Page 1301 
"the possibility of a refusal is not the equivalent of asking and receiving a rebuff". Barber v. Page, 390 U.S. 719,88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).
Defense counsel repeatedly and specifically objected to the introduction of Ms. Vella's former testimony because the state made no attempt to subpoena the witness through use of the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings". Section 12-21-280, Code of Alabama 1975. It is noted that four witnesses for the defense were subpoenaed under the provisions of this act.
The accused has a constitutional right of confrontation and cross examination which is an essential and fundamental requirement of a fair trial. Pointer v. Texas, 380 U.S. 400,85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Mattox v. United States,156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); Douglas v.Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).
The traditional exception, arising from necessity, to the confrontation requirement is where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross examination by that defendant. Barber; Mattox.
The general rule regarding the use of former testimony is stated in Gamble, McElroy's Alabama Evidence (3rd ed. 1977) § 245.07 (1).
 "The testimony of a witness, in a former trial or action, given (1) under oath, (2) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross examination, (3) under circumstances affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination and (4) given in a litigation in which the issues and parties were substantially the same as in the present cause, is receivable as evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible."
In laying a predicate for the introduction of former testimony, the proponent of the statement must show that he has exerciseddue diligence in seeking to procure the attendance of the witness. Pope v. State, 183 Ala. 61, 63 So. 71 (1913); Harwellv. State, 12 Ala. App. 265, 68 So. 500, cert. denied, 192 Ala. 689,68 So. 1019 (1915).
In 1977 the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings was adopted and became effective in Alabama. Georgia has adopted a similar act in Ga. Code Ann., Section 38-2001a. The Georgia statute, unlike Alabama's, has a specific provision for summoning a prisoner in Georgia to testify in another state. Ga. Code Ann., Section 38-2004a.
Prior to the United States Supreme Court decision of Barberv. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), in the cases in which the witness is located but is outside the state, the traditional rule required no evidence of an attempt to bring him back. Pruitt v. State, 92 Ala. 41, 9 So. 406
(1890). Prior to Barber it was held in a state which had enacted the Uniform Act that the prosecution need not make use of the Act but could simply show that the witness was outside the state's jurisdiction. State v. Martin, 73 Wn.2d 616,440 P.2d 429, 434-435 (1968). However, in Barber it was held that "a witness is not `unavailable' for purposes of the foregoing exception to the [right of] confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial".
The Supreme Court of Alaska noted that the effect of Barber
was to change the traditional rule.
 "In Barber v. Page, the United States Supreme Court held that, where a witness was incarcerated in a federal prison outside the state, the state could not use his preliminary hearing testimony at the petitioner's trial without making a good faith effort through the federal authorities to bring him back to testify."
 Fresneda v. State, 483 P.2d 1011, 1017 (Alaska, 1971). *Page 1302 
And in Eastham v. Johnson, 338 F. Supp. 1278, 1281 (E.D.Mich. 1972):
 "Barber v. Page discredited the old concept that a mere showing by the prosecution that a witness was in another state would constitute `unavailability' so as to justify the use of a transcript at a defendant's trial. Since Barber v. Page, the prosecution must do more than just show the witness is out of the jurisdiction of the state where the defendant is being tried. Where the prosecution knows the specific location of a witness who is out of the state, the prosecution must subpoena the out-of-state witness under the `Uniform Act to Secure the Attendance of a Witness from Without a State' if such a statute is available."
See also State v. Alexander, 108 Ariz. 556, 503 P.2d 777
(1972); People v. Joines, 11 Cal.App.3d 259, 89 Cal.Rptr. 661
(1970); State v. Kim, 55 Haw. 346, 519 P.2d 1241 (1974); Brooksv. State, 35 Md. App. 461, 371 A.2d 674 (1977); People v.Graham, 69 Misc.2d 567, 330 N.Y.S.2d 717 (1972).
In Barber, the Supreme Court noted:
 "For witnesses not in prison, the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings provides a means by which prosecuting authorities from one State can obtain an order from a court in the State where the witness is found directing the witness to appear in court in the first State to testify. The State seeking his appearance must pay the witness a specified sum as a travel allowance and compensation for his time. As of 1967 the Uniform Act was in force in 45 States, the District of Columbia, the Canal Zone, Puerto Rico, and the Virgin Islands. See 9 Uniform Laws Ann. 50 (1967 Supp.). For witnesses in prison, quite probably many state courts would utilize the common-law writ of habeas corpus ad testificandum at the request of prosecutorial authorities of a sister State upon a showing that adequate safeguards to keep the prisoner in custody would be maintained." Barber, 88 S.Ct. 1321, n. 4.
Here the state made absolutely no showing that Ms. Vella was unavailable. It is incumbent upon the prosecution to present such evidence before her former testimony could be read to the jury. Her testimony played a key role in the conviction of Anderson and the jury should have been given the opportunity to observe her demeanor and manner absent a showing that she was truly unavailable to testify.
Because the prosecution did not utilize the provisions of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings or a writ of habeas corpus adtestificandum or by any other means show that the witness was unavailable to testify, we cannot characterize the state's efforts to produce the witness as having been made with due diligence or in good faith. The mere fact that a witness is incarcerated in another state does not constitute legal "unavailability" for purposes of the introduction of former testimony. Since the witness was not "unavailable" for purposes of the confrontation requirement, this case must be reversed and remanded.
 III
The trial court admitted into evidence a .357 magnum pistol which was discovered approximately four months after the murder and four blocks from the murder scene. The only evidence touching its relevancy or materiality was that such a weapon "could" have been responsible for some of the injuries to the deceased and testimony that Andy Austin, a co-conspirator, was known to have often carried a similar weapon.
For purposes of this appeal we simply note that we fail to see why the pistol was admitted in the first place and how its admission, though erroneous, harmed Anderson. If Anderson be tried again, the weapon should not be admitted without some evidence connecting it to the crime charged.
REVERSED AND REMANDED.
All Judges concur. *Page 1303