We granted certiorari to review the decision of the Court of Criminal Appeals in Dolvin v. State, 391 So.2d 666 (Ala.Cr.App. 1979). The main issue presented for our consideration is whether the trial court erred in permitting a forensic odontologist to testify that in his opinion a skeleton found in Seminole County, Florida, was that of Charles Ray Lovett, based on a comparison of the skeletal teeth with inter vivos photographs of Charles Ray Lovett.
The facts as found in the opinion of the Court of Criminal Appeals are as follows:
On the night of August 16, 1970, Charles Ray Lovett mysteriously disappeared from his home in Decatur. Seven years later a skeleton was found in Seminole County, Florida. The state indicted Mrs. Dolvin for Lovett's murder, and at trial introduced into evidence, over her objection, the testimony of a forensic odontologist who compared the skeletal teeth found in Seminole County, Florida, with two inter vivos photographs of Lovett in an attempt to show that the skeleton was that of Charles Ray Lovett. The petitioner was convicted of the murder of Charles Ray Lovett and sentenced to life imprisonment. The Court of Criminal Appeals affirmed.
On March 13, 1970, defendant's husband, Glenn Dolvin, was indicted for the theft of Lovett's automobile. It was the State's theory at trial that Lovett was kidnapped and murdered by Sue Dolvin and Glenn Dolvin in order to prevent Lovett from testifying at Glenn Dolvin's larceny trial. The evidence presented against Sue Dolvin was stronger than the evidence presented against Glenn Dolvin in the following two respects: Miss Debbie Garrett testified that on the night of Lovett's disappearance, August 16, 1970, she had seen and identified as Sue Dolvin, a woman who was driving a Volkswagen up and down the street on which Lovett lived. Miss Garrett testified that there were two men in the car with the woman, but she was unable to identify those two men. Secondly, there was evidence from Florida Highway Patrolman Clarence Simpson, who testified that around 1:00 a.m. on August 18, 1970, Sue Dolvin came into the highway patrol station at Ocala, Florida, and signed a lost-tag form. The officer said that Mrs. Dolvin had smudges all over her and that her fingernails and clothes were very dirty and she appeared as if she had been camping in the woods. The skeletal remains alleged to be those of the deceased were found in Seminole County, Florida, not far from Ocala. The facts of the instant case are set out more extensively in the opinion of the Court of Criminal Appeals. *Page 679 
On January 26, 1979, Glenn Dolvin, the petitioner's husband, was convicted of the offense of murder in the first degree of Charles Ray Lovett. The Court of Criminal Appeals reversed and rendered the trial court's judgment, holding: "Our review of the evidence leaves no doubt that the defendant was convicted on speculation, suspicion, and conjecture. The judgment is therefore reversed." Glenn Dolvin v. State, 391 So.2d 129
(Ala.Cr.App. 1979). We reversed the decision of the Court of Criminal Appeals in Dolvin v. State, 391 So.2d 133 (Ala. 1980).
Petitioner contends that the trial court erred to reversal insofar as it held admissible expert opinion testimony of Dr. Richard Souviron, a forensic odontologist, concerning identification of skeletal remains founded upon his comparison of the skeletal remains with inter vivos photographs of the victim. Dr. Souviron compared facial structure, occlusion, and the shape of teeth and jaw of a human skull found in Seminole County, Florida, with those of Charles Ray Lovett, as depicted in the inter vivos photographs taken of Lovett.
The seminal case establishing the safeguard against admission into evidence of facts gleaned from an unreliable scientific test is Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). InFrye, the Court of Appeals for the District of Columbia ruled that a systolic blood pressure lie detector test had "not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made." 293 F. at 1014. The rule as stated by that court is as follows:
 Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.
Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923).
Since the lie detector test has not gained the required acceptance in the intervening fifty-seven years, length of existence is clearly not determinative in ascertaining the admissibility of a scientific test. Factors which are determinative include: Whether a test is readily assignable to any particular well-established and defined scientific discipline; whether the test is either applied by a mechanical device or purports to decipher specific data requiring scientific paraphernalia to produce; whether the test tends to trench very closely upon an ultimate issue in the case; whether the test is based on a syllogism that has a major premise or assertion that a fact of legal interest is or is not true, while that fact is only probably true; whether the test relates to mental state as opposed to physical condition; and whether the test attempts a scientific diagnosis of testimony and its veracity by mechanical means. See J. Richardson, ModernScientific Evidence §§ 6.2, 6.17 (2d ed. 1974); Strong,Questions Affecting the Admissibility of Scientific Evidence, 1970 U.Ill.L.F. 1. The above factors are not applicable to the test used in the case before us now. The forensic odontology test applied by Dr. Souviron is in the nature of a physical comparison rather than a scientific test or experiment, as was the case in Frye. Therefore, the Frye test is inapplicable, and will not be resorted to here.
Alabama case law supports the admission of inter vivos photographs for the purpose of allowing the jury to compare the teeth of a human skull with those of the person depicted in the photograph. DeSilvey v. State, 245 Ala. 163, 16 So.2d 183
(1944). Expert testimony comparing inter vivos photographs with a human skull is a refinement and extension of this procedure, but is nonetheless admissible, assuming the *Page 680 
proper predicate is laid. In the case before us, there was a sufficient predicate laid at the trial level to justify admissibility. Dr. Souviron's testimony as to his qualifications in the field of forensic odontology constituted the predicate necessary for the identification testimony that followed. Additionally, the trial court asked Dr. Souviron: "Is what you did a recognized way of comparing these things in the field of science that you are in?" Dr. Souviron answered, "Yes, sir."
"The increasing use of technology in criminal investigations, when consistent with the rights of the accused, should not be inhibited." Chatom v. State, 348 So.2d 838 (Ala. 1977). Petitioner has failed to show that the admission of the forensic odontology test violated her rights. Since the evidence was properly admissible, the trial court committed no error in allowing it to be heard.
Petitioner objects to the jury charge defining legal malice as "the right of the jury to infer that there was malice." This objection, however, fails to rise to the level of reversible error, since the charge, taken as a whole, was correct. Gosa v.State, 273 Ala. 346, 139 So.2d 321 (1962). Her allegation that defense attorney was prevented from conducting a "thorough and sifting cross-examination" is similarly without merit, since the court only sustained objections to argumentative and completely irrelevant questions by defense attorney. Petitioner argues further that the jury drew inferences from her failure to testify, but she fails to show that the prosecutor improperly commented on her failure to testify, such comment by the prosecutor being the grounds for reversal under Alabama law. See Code 1975, § 12-21-220. She also charges that the Court of Criminal Appeals applied an incorrect standard in ruling on her motion for change of venue. In support of this argument, petitioner cites Anderson v. State, 362 So.2d 1296
(Ala.Cr.App. 1978), for the proposition that in order to obtain a change of venue, a defendant must show that as a result of pretrial publicity it is "reasonably unlikely that the defendant can secure a fair and impartial trial." 362 So.2d at 1299. Anderson also holds, however that "[n]ewspaper articles, without more, are not evidence on a motion for change of venue; their effect must be shown." 362 So.2d at 1298. The Court of Criminal Appeals' requirement of actual jury prejudice thus comes within the Anderson standard.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.
FAULKNER and EMBRY, JJ., dissent.
BLOODWORTH and ALMON, JJ., not sitting. *Page 1016