387 So.2d 284 (1980)
Sanford Lewis JONES
v.
STATE.
5 Div. 477.
Court of Criminal Appeals of Alabama.
June 17, 1980.
Rehearing Denied August 19, 1980.
Larkin Radney, Alexander City, for appellant.
Charles A. Graddick, Atty. Gen., Jane LeCroy Brannon, Asst. Atty. Gen., for appellee.
*285 LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a conviction of uxoricide. The indictment charged murder in the first degree. The result of the trial was a jury verdict and judgment finding defendant guilty of murder in the second degree and fixing his punishment at life imprisonment.
The undisputed evidence shows that defendant shot and killed his wife with a pistol almost immediately after they had a confrontation with one another on the side of a public road to which they had arrived in separate automobiles. There was little, if any, substantial evidence of self-defense. The controverted issue was as to defendant's plea of not guilty by reason of insanity.
There is no contention that the evidence is not sufficient to support the verdict, and we find no reasonable basis for such a contention.
A major issue raised by appellant is as to a portion of the court's oral charge on the defense of insanity. It is as follows:
"Now, the other defense is the one that they seemed to rely on the most, the defense of insanity. I want to tell you the best I know what the law says about insanity. Every person over fourteen years of age is presumed to be sane, therefore, a person over fourteen who pleads insanity has the burden of proving to you, to your reasonable satisfaction that he is insane. What is insanity? The legal test is as follows: where there is no capacity to distinguish right from wrong, a Defendant is nevertheless not legally responsible, if by reason of a mental disease, he has so far lost the power to choose between right and wrong and could not avoid the act so that his free will was destroyed and the alleged crime was the offspring of mental disease, so the first test is whether or not he can distinguish right from wrong. You heard the evidence. The second test is whether he could distinguish between right and wrong, he couldn't resist doing the wrong because of mental disease. It is up to you to decide."
At the conclusion of the court's oral charge, it said:
"What says the State?"
Immediately thereafter the following occurred:
"MR. YOUNG: Satisfied with the Court's oral charge.
"THE COURT: What says the Defendant?
"MR. RADNEY: I would like to approach the bench.
"THE COURT: Ladies and Gentlemen of the jury, go out and deliberate and consider all of the evidence in this case, if you are reasonably satisfied of the guilt of the Defendant, of any of these charges, then you sign one of these forms, and I have prepared the verdict for you, and you take them along with you, and the way that these verdicts have been prepared conform with the ones that I have read to you. Take these verdicts and the exhibits along with you to the jury room, and reach your verdict, and the court will await your verdict.
"(Whereupon, the jury was removed from the courtroom, and the following occurred outside the presence of the jury:)
"MR. RADNEY: Let the record show that the Court gave me an exception to my objection to the Court's oral charge before the jury. I took exception to the Judge's jury charge, that is, his legal definition of the test of insanity in Alabama. That it is not stated correctly, and it was confusing and erroneous. Furthermore, I object to the Court's refusing to give the written charges presented by the Defendant."
The record affirmatively shows that defendant stated his exception to the court's oral charge after the jury had retired to commence its deliberations. This was too late. Cox v. State, 280 Ala. 318, 193 So.2d 759 (1967); Maund v. State, Ala. Cr.App., 361 So.2d 1144 (1978); Van Antwerp v. State, Ala.Cr.App., 358 So.2d 782, cert. denied, Ala., 358 So.2d 791 (1978); Luker v. State, Ala.Cr.App., 358 So.2d 504 *286 (1978); Hurst v. State, Ala.Cr.App., 356 So.2d 1224 (1978).
There is some indication perhaps that there was some off the record discussion among the court and counsel that may have caused defendant's counsel to think that it was not necessary to state his exception before the jury retired, but such a conclusion would be pure speculation by us, in which we have no authority to indulge.
Moreover, the exception stated by defendant does not meet the requirement that to be a valid objection or exception to part of the court's oral charge there must be a recital of what the court said, or the substance thereof. Walker v. State, 269 Ala. 555, 114 So.2d 402 (1959); Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962); McClary v. State, 291 Ala. 481, 282 So.2d 384 (1973). Some qualification in the strict application of that principle may be superficially noted as to an exception that was held sufficient in Smith v. State, Ala.Cr. App., 370 So.2d 312, cert. denied, Ala., 370 So.2d 319 (1979). Therein the exceptor said, "We except to the part of the jury charge regarding failure of the defendant to testify." However, Smith is clearly distinguishable in that the exception pertained to a subject that would have been prejudicial to defendant by the mere injection of it into the court's oral charge, unless "the protective feature to defendant" of the subject was stated. In the instant case, the subject involved was introduced by defendant himself and constituted the main theme of the trial after the establishment of the corpus delicti. The propriety of the inclusion of the subject in the court's oral charge is unchallenged and unchallengeable.
For each of the reasons stated there should be no reversal on the ground, the only ground, asserted by appellant. In addition, we note that the part of the court's oral charge under consideration, though imprecise and unclear, may not have been as harmful to defendant as appellant apparently thinks. His particular criticism is based on the premise that insanity consists in either the inability by reason of mental disease to distinguish between right and wrong or the inability by reason of mental disease to resist the impulse to do wrong (commit the crime). As to this, appellant is, of course, correct. We are not certain, however, that the jury was led to believe by the charge that a combination of the two phases of insanity is necessary to support the defense. Unfortunately the court did not clearly charge to the contrary. The mistake was one often made in methods used to state two propositions, that is, in failing to show whether they are conjunctive on the one hand or disjunctive on the other. In many instances, however, the ambiguity is dissipated in the mind of the hearer, and he is able to arrive at a correct understanding of what is meant, by consideration of the context or observance of the manner and vocal emphases of the speaker at the time.
The instruction could have been clearer as orally stated to the jury than it appears in type in the record. Much depends on whether the particular part of the charge is correctly punctuated. The trial judge is not responsible for the punctuation. As correct punctuation of a transcribed oral statement is dependent at times upon what the speaker means, erroneous punctuation is not necessarily the fault of the court reporter. To such consideration we subject the approximately last half of the previously quoted part of the court's oral charge:
"[W]here there is no capacity to distinguish right from wrong, a defendant is nevertheless not legally responsible, if by reason of a mental disease, he has so far lost the power to choose between right and wrong and could not avoid the act so that his free will was destroyed and the alleged crime was the offspring of mental disease, so the first test is whether or not he can distinguish right from wrong. You heard the evidence. The second test is whether he could distinguish between right and wrong, he couldn't resist doing the wrong because of mental disease. It is up to you to decide."
A difference is readily seen in the first sentence if it is so punctuated as to make two sentences:

*287 "[W]here there is no capacity to distinguish right from wrong, a defendant is nevertheless not legally responsible, if by reason of a mental disease, he has so far lost the power to choose between right and wrong and could not avoid the act so that his free will was destroyed and the alleged crime was the offspring of mental disease. So the first test is whether or not he can distinguish right from wrong."
As to the next to the last sentence, difference is apparent by placing a comma between "is" and "whether," so as to make the sentence read:
"The second test is, whether he could distinguish between right and wrong, he couldn't resist doing the wrong because of mental disease."
Even with the addition of a comma, the sentence is not perfect, but it tends to diminish any asserted fusion of the two separate and distinct branches of insanity. This is especially true when the word "whether" is credited with one of its recognized significations, "no matter if" (Webster's Second International Dictionary).
The only expert witness on the question of insanity testified on behalf of defendant to the effect that he did have the capacity to distinguish between right and wrong but that, in his opinion, he did not have the capacity by reason of mental disease to resist the impulse to kill his wife under all of the circumstances existing at the time. In all probability, the jury understood correctly that the case was traveling on a single-wheel issue of capacity to resist the impulse to kill and not on the usual double-wheel issue as to insanity.
We find no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
Appellant complaint that "The Court failed to address two issues presented for review in appellant's brief." We do so now.
One of the issues, as stated by appellant was that the trial court's "continuous remarks concerning the defense of insanity, the evidence touching the issue and the weight of the evidence" were highly prejudicial to the defendant. Appellant expressly refers to several instances in the transcript as a basis for his contention. His concluding paragraph on the issue is as follows:
"Counsel for the defendant did not object to the numerous comments by the trial court, but to do so would have merely underscored the comment and tend to pit the defendant against the Court. The atmosphere created by the Court's comments was one of disparagement and for counsel to object would surely highlight the Court's adverse opinion. As stated well in Anderson v. State, 209 Ala. 36, 95 So. 171, `an exception to this general rule requiring appropriate objection or motion invoking corrective instruction or action by the Trial Court, is where the remark or argument of counsel (or Court) is so grossly improper and highly prejudicial to the opposing party as that neither retraction nor rebuke by the Trial Court would have destroyed its sinister influence.' The cumulative effect of remarks, conduct and attitude of the trial judge during the progress of trial, deprived defendant of a fair and impartial trial, and requires reversal of conviction. Williams v. State, 39 So.2d 29, 34 Ala.App. 253, cert. denied, 39 So.2d 37, 251 Ala. 397, cert. denied, 39 So.2d 39, 251 Ala. [696] 697."
*288 We think earnest counsel for appellant has been misled by considering the quoted statement of Justice Thomas in Anderson without giving consideration to the context and the authorities cited therefor at 209 Ala. 44, 95 So. 171.
It is to be noted that in Anderson, there was an affirmance, which marks the quoted statement as language unnecessary to the decision therein. The first and third cases cited in support of the quoted statement are B.R.L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80 and B.R.L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876. We consider them in their chronological order.
In B.R.L. & P. Co. v. Drennen, the improper argument of counsel was made a ground of a motion for a new trial, which was overruled. The Supreme Court ruled that this was sufficient to present a question for review. However, it also said:
". . . This Court, on appeal, can only review the actions and rulings of the trial courts, and not those of counsel..." 175 Ala. at 350, 57 So. at 880.
In B.R.L. & P. v. Gonzalez, there were objections to argument of opposing counsel. The objections were overruled. Furthermore, the same matter constituted grounds for motion for a new trial, which also was overruled. Upon original submission, the judgment of the trial court was reversed and the cause remanded; on rehearing there was an affirmance, Justice Ormond Somerville speaking for a majority (four) and Justice Mayfield for the minority (three). There was a thorough ventilation of their views, but nothing therein is to be found to the effect that an appellate court should reverse the trial court for action within its jurisdiction unless such action has in some way been questioned in the trial court. The same is true as to the other authorities cited in support of the quoted excerpt from Anderson v. State, supra.
In Williams v. State, cited by appellant in the quoted portion of his brief, it was stated, after remandment, in reference to the remarks, conduct and attitude of the trial judge during the trial:
"In each of the instances we have copies from the record, counsel for appellant excepted to the remarks of the court. Motion for a mistrial was also made in a few cases. The questions are also before us by a motion for a new trial." 39 So.2d at 35.
Except in cases of automatic appeals, provided by statutory law as now codified in Ala.Code 1975, § 12-22-241, it is not within the province of a court, on appeal, to reverse a trial court for what occurs during a trial unless the aggrieved party in some way presents to the trial court the grievance upon which he bases a claim for reversal by the appellate court. Many cases have so held. We cite a few of the more recent ones. Barnett v. State, 51 Ala.App. 470, 286 So.2d 876, cert. denied, 291 Ala. 773, 286 So.2d 890 (1973); Dolvin v. State, 51 Ala.App. 540, 287 So.2d 250 (1973); Lambert v. State, 55 Ala.App. 669, 318 So.2d 364 (1975); Brantley v. State, Ala.Cr.App., 335 So.2d 189, cert. denied, Ala., 335 So.2d 194 (1976); Holliday v. State, Ala.Cr.App., 346 So.2d 26 (1977).
The other of the "two issues presented for review in appellant's brief" that were not addressed on original submission is stated in appellant's brief as follows:
"The Trial Court erroneously limited the introduction of evidence as to the issue of mental capacity."
In support of his contention, appellant refers to three instances when the court sustained objections of the State to questions asked by defendant's counsel. One instance was during the defendant's cross-examination of Officer Dewey Jones as follows:
"Q. Do you know Thomas Lee McKinney?
"A. Yes, sir.
"Q. Does he have a criminal record?
"MR. MORRIS: We object to whether Thomas Lee McKinney has a criminal record. He is not a party to this lawsuit.
"THE COURT: Overruled. We have an intelligent witness here___
"MR. MORRIS: We reserve an exception. He's not on trial here.

*289 "Q. Does he have a criminal record?
"A. Yes, sir.
"Q. And does he have a record for crimes like grand larceny and also___
"MR. MORRIS: ___ Your Honor, we object to that again. How far is the Court going to let him go into this?
"THE COURT: Sustained.
"MR. RADNEY: This is cross-examination.
"MR. MORRIS: There is higher and better evidence anyway.
"THE COURT: I sustained the objection.
"MR. RADNEY: This is cross-examination, and he's answered yes, and I have the right to elicit___
"THE COURT: Well, you have received your answer, and I don't think there is any further reason for going into it any more. I sustained his objection as to the last question.
"MR. RADNEY: Reserve an exception."
Thomas Lee McKinney was the ex-husband of the deceased, Charlene McKinney Jones. There is evidence to the effect that there had been clashes bordering on personal violence between defendant and Thomas Lee McKinney. There is no evidence that McKinney was a party to the final confrontation between defendant and his wife. It is difficult to understand the theory upon which defendant bases his claim that the court was in error in sustaining the State's objection to the question, "And does he have a record for crimes like grand larceny and also___." We need not determine whether such record would have been admissible in evidence. Even so, proof of it must be made in accordance with the best evidence rule, which would not include the testimony of a witness who is not shown to have personal knowledge of the record or the contents thereof. Bear v. Swift & Co., 259 Ala. 668, 68 So.2d 718 (1953). The principle applies to criminal cases also. Pierce v. State, 42 Ala.App. 53, 151 So.2d 793 (1963); Headley v. State, 51 Ala.App. 148, 283 So.2d 458 (1973).
While defendant was testifying as to an incident between him and his wife a few days before she was killed, the following occurred:
"A. Well, I got out there about ten minutes to four, and she wasn't there, and when she arrived___ coming by the mill, I waited there, and when I walked by, she had a butcher knife and it had stuck a hole in her purse, and I twisted her arm and led her to the car and went out to my sister's.
"Q. Did you take the butcher knife away from her?
"A. That's right.
"Q. Now, did she generally carry a butcher knife?
"MR. YOUNG: Now, we object to that.
"THE COURT: Sustained.
"MR. RADNEY: He'd know whether or not she usually carried a butcher knife, she was married to him.
"MR. MORRIS: The question is whether she had on this day, Judge. We don't want to talk about February the 3rd, we want to talk about this occasion.
"THE COURT: I sustained the objection, go ahead.
"Q. Go ahead.
"A. And she asked me, she said let's go pick up the children. Now, the children was up at Thomas Lee McKinney's mother's house, and I got up there, and there was about twelve cars in the yard, and all the lights were off, and she__ to me it seemed like___
"MR. MORRIS: And we object to what it seemed like to him, Judge.
"MR. RADNEY: I'm going to tie all of this in, Judge, I can only do it one thing at a time, if I don't do it with this witness, I'll do it with the next nine witnesses.
"THE COURT: Go ahead.
"Q. Go ahead.
"A. It seemed like to me___
"MR. MORRIS: And we object to what it seemed like to him.
"Q. When you went by the house, was the house all black dark?
"A. Yes, it was."
*290 As defendant relied partly upon the defense of self-defense, it would seem at first view that the sustention of the State's objection to the question, "Now, did she generally carry a butcher knife," was in error as in conflict with the principle that where self-defense is an issue in a homicide case, "the accused is entitled to prove that the deceased was in the habit of carrying firearms or other deadly weapons or that he had the reputation of habitually being armed." Gamble, McElroy's Alabama Evidence § 63.01(2) (1977). However, it is not clear that the evidence would have been of any value whatever to defendant on the issue of self-defense. On the contrary, according to the testimony of defendant, his self-defense contention was not based on any apprehension of being hurt by a butcher knife in the hand of the victim but by a handgun or pistol. He testified that he shot her while she was leaving her automobile and he was on the ground. He said she owned a .25 automatic, that she had in the past pointed it at him and that she kept it in her purse "at all times." He further testified:
"She reached for her purse and stuck her hand in it, and I began to shoot."
At the time the question was asked as to whether the victim generally carried a butcher knife, defendant had just stated that he had taken a butcher knife from her on a prior occasion, at another place. Whether she generally carried a butcher knife did not seem to have any relevancy on the subject of his testimony at that time. Under all the circumstances, the trial court is not properly chargeable with error in sustaining the State's objection to the question. Furthermore, we are of the view that the ruling did not cause substantial injury to defendant.
Another ruling of the court constituting the basis for appellant's complaint occurred during the following part of the direct examination of Officer Sammy Mulberry, a first cousin of defendant:
"Q. And what happened?
"A. Didn't anything happen right then, not as long as I was with him, he got his things and left.
"Q. And did you see him later that day?
"A. Yes, I did.
"Q. And what had happened since you had last seen him?
"MR. YOUNG: Now, we object unless he knows, unless he knows of his own knowledge.
"THE COURT: Sustained, unless he knows.
"MR. RADNEY: Your Honor, this is a statement what the Defendant said to him.
"MR. MORRIS: This is prior to the event, though, January 26th.
"THE COURT: Sustain the objection.
"MR. RADNEY: Reserve an exception. Answer their questions.
"MR. YOUNG: No questions.
"THE COURT: Very well. Call your next witness."
It appears that perhaps defendant's counsel was seeking to ascertain from the witness what the defendant said "had happened since you [he] had last seen him," and it is conceivable that under some circumstances it would have been admissible, even though on its face it would appear to be a self-serving declaration of defendant, occurring several days before he killed his wife. Even so, the question did not call for what the witness heard the defendant say, but as to what had happened between the two times that day that he had seen defendant. The court was correct in sustaining the objection unless it was shown that the witness had knowledge of what had happened, with which condition it appears that the witness could not comply.
In his brief, appellant refers to one other instance in support of his contention that the court "erroneously limited the introduction of evidence as to the issue of mental capacity." It was during the direct examination of defendant and just after defendant had testified as to an occurrence about three weeks before his wife was killed and as to how defendant felt during the intervening three weeks. The transcript on the point is as follows:
"Q. Did you lose weight?

*291 "A. That's right.
"MR. YOUNG: I would like to ask the Court to ask Mr. Radney to quit leading the witness.
"THE COURT: You are leading, but go ahead.
"Q. How much did you lose?
"A. Twenty pounds.
"Q. About twenty pounds?
"A. That's right.
"Q. Do you know why?
"MR. YOUNG: And we object.
"THE COURT: Sustain the objection.
"Q. Let me ask you this: Did you go to any medical doctors?
"A. That's right."
Appellant cites no authority to support any claim that the ruling of the court was erroneous. There is ample authority to support the view that a lay witness can testify that he has lost weight, but generally he cannot testify as to the cause. Gamble, McElroy's Alabama Evidence, § 128.09 (3d ed. 1977).
". . . As tending to support the allegation that plaintiff was injured, and showing the extent and character of his injuries, it was proper to receive evidence of the physical condition within a reasonable time prior and subsequent to the injury, that he suffered loss of weight. . . and to all of these things it was competent for the plaintiff to testify as a witness in his own behalf, and the opinion of expert professional witnesses as to the cause of his subsequent condition might be received. (Citations omitted)." St. Louis & S.F.R.R. Co. v. Savage, 163 Ala. 55, 57, 50 So. 113, 114 (1909).
The application for rehearing should be overruled.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.