[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 820 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 821 
First degree murder; sentence, life imprisonment.
The sufficiency of the evidence is not raised on appeal. As appellant points out in his brief, the facts which gave rise to this eighteen and one-half year old case are ably set forth in the companion case of Eaton v. State, 278 Ala. 224,177 So.2d 444 (1965), and need not be restated here. We point out that the case is before this court on remand after appeal following directions that a writ of habeas corpus issue, subject to the State's right to retry appellant within a reasonable time.Lokos v. Capps, 625 F.2d 1258 (5th Cir. 1980).
 I
Appellant insists the trial judge erred in denying his written motion requesting that the trial judge withdraw from trying the case due to interest, bias, or prejudice on his part. Appellant's assertion of alleged bias is supported solely by a letter written by the trial judge on July 2, 1979, prior to the reversal of appellant's case by the federal court. The substance of the letter, addressed to the director of the Board of Pardons and Paroles, appears in the record as follows:
"Dear Mr. Williams:
 "I strongly object to Dezso Lokos being granted parole when he is considered in September of 1979. Mr. Lokos was one of the participants in one of the most gruesome murders ever committed in this State.
"Yours very truly,"
At the pretrial hearing on appellant's motion, appellant's counsel presented no additional evidence and relied entirely on the contents of the letter. In explanation of his motivation in writing the letter, the trial judge made this statement:
 "THE COURT: All right; for the record, I did, in fact, write a letter to the Board of Pardons and Parole, July 2, 1979, and the letter that is attached to the Motion I did write and sign. I did not participate *Page 822 
in the trial of the case the first time. I did not know on July 2, 1979, that there was pending an appeal. I thought that the individual was convicted and had been serving time in the penitentiary. I did not know there was any appeal for any consideration by any court whatsoever; and that at the time I wrote the letter objecting to his parole it was my opinion that he was not entitled to parole because he had been convicted of murder. To my knowledge it was the first time he had been considered by the Board of Pardons and Parole. I don't have any bias or prejudice against this defendant anymore than I do against any other defendant that comes into court. And I don't think that just because I wrote a letter objecting to his parole disqualifies myself.
 "I am aware there is strong feeling in the community of Sumter County about Mr. Lokos being granted parole and that was the reason I wrote this letter, because numerous citizens had made statements to me in the past that they would object to him receiving parole because of the gruesome murder. I am aware that a delegation of citizens from this county have been to the Board of Pardons and Parole in the past. I did not participate in any manner whatsoever — proceedings that I was aware; therefore, I wrote the letter.
 "Based on all of the considerations, I do not feel that I am disqualified in this case because of the letter I wrote. The letter was written because of the conversations and the statements that had been made to me by the citizens of Sumter County."
A motion to recuse must be addressed to the judge challenged. The ruling of that judge on the motion will not be reviewed on appeal in the absence of clear evidence of prejudice or bias.Slinker v. State, 344 So.2d 1264 (Ala.Cr.App. 1977). The prejudice or bias against the appellant required to disqualify the judge must be of a personal nature, as opposed to a judicial bias. Seibold v. State, 382 So.2d 1141 (Ala.Cr.App. 1979), cert. denied, 382 So.2d 1146 (Ala. 1980); Pannell v.State, 356 So.2d 219 (Ala.Cr.App. 1977), cert. denied,356 So.2d 222 (Ala. 1978); Johnson v. State, 335 So.2d 663, (Ala.Cr.App.), cert. denied, 335 So.2d 678 (Ala. 1976), cert.denied, 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629 (1976);Slinker, supra, Canon 3 A (5), Alabama Canons of Judicial Ethics.
The words bias and prejudice, as used in this context, refer to the mental attitude or disposition of the judge toward the defendant himself, and not to the judge's views regarding the crime with which the defendant is charged. In Re White,53 Ala. App. 377, 300 So.2d 420, cert. denied, 293 Ala. 778,300 So.2d 439 (1974). The judge's remarks, quoted supra, reveal his post conviction letter was motivated by both his judicial attitude and the community's attitude toward the deplorable nature of the crime of murder. We cannot say the letter was written with any personal bias toward appellant as the focus of the judge's recommendation. Also, this recommendation was based upon a presumably legal conviction obtained in a court of law, and not upon a premature prejudgment of guilt based upon information gained outside of the protection of the courts.White, supra. No alignment of the trial court with the prosecution against this appellant in the present trial is demonstrated by this letter. Any possible doubt of the judge's impartial attitude created by the letter was removed by his explanation of his motivation in writing the letter. The evidence presented by appellant simply fails to establish the clear showing of prejudice required to mandate the reversal of the trial judge.
 II
Appellant cites an allegedly improper comment made by the trial judge as error requiring reversal. The comment complained of appears in the colloquy below:
 "MR. COPLIN: Your Honor, we're not asking this person to explain — we know he's getting paid by the State, but we just want him to please answer our questions: That's all we want him to do. *Page 823 
 "THE COURT: The State's paying me too. Let's go ahead. Please, just respond to his questions.
"MR. COPLIN: We make a motion for a mistrial.
"THE COURT: Overruled."
Appellant alleges the court's comment implied a partiality on the part of the judge, appeared to vouch for the credibility of the witness, and impinged upon the credibility of appellant's attorney.
Unless allegedly prejudicial remarks by the trial court are objected to, the remarks are not subject to review except when they are grossly improper. There must be either an objection, a motion to exclude, or a motion for the jury to disregard the statement before error will be preserved. Carpenter v. State,400 So.2d 417 (Ala.Cr.App.), cert. denied, 400 So.2d 427 (Ala. 1981). While a particular remark by the trial judge may be open to question, in order for it to amount to the grossly improper error requiring reversal, it must have influenced the result of the case. McCovery v. State, 365 So.2d 358 (Ala.Cr.App. 1978). The judge's comment, when taken in context with the remarks of appellant's counsel, does not rise to this level. It is clear from the record that appellant made no specific objection to the remark, nor did he request its exclusion. While appellant did move for a mistrial, no ground for the requested mistrial was stated, nor was the trial court directed to any error on its part. A mistrial may only be granted on manifest necessity or if required by the ends of justice. McCovery, supra. Such is not the case here. There is no error in the state of the record as here presented.
 III
Appellant contends the trial court erred in allowing into evidence inculpatory statements made by appellant, both at the time of his arrest and on the witness stand in two prior trials.
This case was originally tried prior to Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and hence under Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677,23 L.Ed.2d 253 (1969); the Miranda standards per se are not applicable to extrajudicial confessions upon retrial. Rather, the admissibility of the statements is to be determined by the totality of the circumstances surrounding the confession. Grantv. Wainwright, 496 F.2d 1043 (5th Cir. 1974). This test, grounded upon the policies of the privilege against self-incrimination, looks to all surrounding circumstances to determine whether impermissible coercive forces applied by law enforcement officials cause the defendant's free will and rational intellect to be overborne, hence rendering his confession involuntary. Davis v. North Carolina, 384 U.S. 737,86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Grant, supra; Beecher v.Alabama, 408 U.S. 234, 92 S.Ct. 2282, 33 L.Ed.2d 317 (1971). It is a substantive test of voluntariness which must take into specific account any failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance. Jenkins, supra. As well, the appellant's mental state, or sanity, at the time of the confession is an important factor to be considered. Lokos v. Capps, 528 F.2d 576
(5th Cir. 1976). Appellant contends the trial court did not hold a sufficient hearing to determine appellant's mental stability and sanity at the time he made the extrajudicial confessions. He asserts there was no evidence presented to the court of any professional psychiatric diagnosis of appellant's sanity and state of mind at the time of his arrest upon which the trial court could have reached an informed decision. While appellant does not waive any contention of other forces affecting the voluntariness of the confession, the thrust of his argument is directed towards appellant's alleged mental incapacity to give a voluntary confession at the time of his arrest.
Our review of the transcript reveals that appellant's contention that the trial court failed to hold a proper and sufficient voluntariness hearing, taking into specific account appellant's sanity at the time of his arrest, is without ground in the record. *Page 824 
The trial court held a voluntariness hearing outside the presence of the jury, which consumed in excess of one hundred pages of trial transcript and included the testimony of eight witnesses. Contained in that evidence was the testimony of one psychiatrist, one general practitioner M.D., four law enforcement officers, the appellant, and one of his accomplices. Also introduced for the court's consideration were the appellant's prison and hospital records. All of the witnesses, except the psychiatrist, observed appellant and his behavior during the time surrounding his arrest and subsequent statements. All of those witnesses testified that appellant's behavior was "normal" or sane. The psychiatrist, Dr. Bacon, who had treated appellant some years prior to his arrest, testified that, based upon his observation of appellant in 1955, while appellant probably could have understood the consequences of his actions in 1963, he would not have understood to the extent that a rational individual would. Yet the same psychiatrist testified he saw appellant the day before the instant trial for the first time since 1955 and was "amazed at the change" in appellant's mental condition. In his opinion, appellant's mental disease was in remission at that time, and could have been in remission prior to his arrest in 1963. This witness also testified that during the time he treated appellant in 1955, he never saw appellant in a psychotic state. He stated it was possible that appellant was not suffering from paranoid schizophrenia in 1955, but rather was exhibiting a psychopathic personality, which is not considered a mental disease. He also stated he could not give an opinion as to whether appellant could have willingly and voluntarily given a statement to law enforcement officers. However, he did believe appellant was suffering from paranoid schizophrenia in 1963.
Reviewing the testimony concerning the voluntariness of appellant's confession, we find there was sufficient evidence before the trial judge upon which, viewing the "totality of the circumstances," he could have found appellant knowingly, willingly, voluntarily, and rationally made the confession to law enforcement officers at the time of his arrest. Watters v.State, 371 So.2d 456 (Ala.Cr.App. 1979); Elrod v. State,281 Ala. 331, 202 So.2d 539 (1967).
We note that the federal court in Lokos, supra, considered virtually the same evidence as heard by the trial court here and found it insufficient to establish appellant's competency to stand trial in 1964. However, in the instant trial there was also testimony by expert psychiatric witnesses presented by the State on rebuttal which refuted Dr. Bacon's assessment of appellant's mental condition. Had the court in Lokos, supra, had the benefit of this testimony, we believe this case would not be again before this court today. While the trial court did not hear this additional testimony at the time of the voluntariness hearing, it is still available to us to consider in upholding the trial court's determination of voluntariness. Where a confession is admitted without required preliminary proof, if it is followed by such proof or proper predicate, any potential error is cured. Ragland v. State, 383 So.2d 897
(Ala.Cr.App. 1980); Crenshaw v. State, 225 Ala. 346,142 So. 669 (1932).
Having determined that appellant's extra-judicial confession was properly admitted, we find it unnecessary to address the problem involving the admissibility of his confession from the two prior trials. The information contained in those statements was substantially identical to and cumulative of the information contained in appellant's statement to the law enforcement officers. Thus, even if their admission constituted error, because there was a confession by appellant properly admitted into evidence in conjunction with strong corroborative evidence of the appellant's guilt, such error would be harmless. Kelley v. State, 366 So.2d 1145 (Ala.Cr.App. 1979).
 IV
Appellant argues the trial court erred in admitting his testimony, as well as that of Dr. Grubbs and Dr. Kimbrough, into evidence as recorded in a transcript of his prior trial. Dr. Grubbs and Dr. Kimbrough were *Page 825 
both deceased at the time of the instant trial. Appellant's basis for error lies in his assertion that he was denied the constitutional right of cross-examination in the prior trial in that he was (1) mentally incompetent and (2) represented by the same appointed counsel as one of his accomplices.
The general rule regarding the use of former testimony appears in Anderson v. State, 362 So.2d 1296 (Ala.Cr.App. 1978), as follows:
 "`The testimony of a witness, in a former trial or action, given (1) under oath, (2) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross examination, (3) under circumstances affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination and (4) given in a litigation in which the issues and parties were substantially the same as in the present cause, is receivable as evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible.'"
There is no issue raised by appellant regarding the above rule except as to point (3). All the other requirements were met without question.
In regard to the representation of appellant by the same counsel as an accomplice, appellant cites Glasser v. UnitedStates, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), for the proposition that trial courts must refrain from orders requiring that one attorney, over an appellant's objection, simultaneously represent conflicting interests of another appellant which might diverge from those of his first client. In Glasser, the trial court appointed the retained counsel of one appellant, over that appellant's objection, to simultaneously represent a second appellant in their joint trial for conspiracy. In the immediate case, the two defendants were not tried simultaneously, but had separate trials. Appellant does not allege that any objection was taken at the original trial to the representation provided for appellant. Also, there was no demonstration here on appeal that appellant's original trial was prejudiced in any real way by his former legal representation. We cannot say under the facts now before us that appellant was deprived of the effective assistance of counsel or of a fair opportunity for cross-examination by the nature of his legal representation in the prior trial. Hubbard v. State, 382 So.2d 577 (Ala.Cr.App. 1979), cert. denied, 382 So.2d 597 (Ala. 1980), reversed onother grounds, 405 So.2d 695 (Ala. 1981).
As to the federal court's finding that appellant was mentally incompetent to stand trial at the time of the previous trial, we quote the following from the court's opinion:
 "We conclude that on this record it has been established that Lokos was not competent to stand trial in February of 1964.
 "The only conclusion that we can reach from this record is that the mental condition of Lokos in February of 1964 prevented him from effectively consulting with his counsel and rationally understanding the proceedings. The conditional order to issue the writ does not, of course, prevent the civil commitment of Lokos or other lawful custody apart from this particular criminal charge. See Ala. Code tit. 22, § 22-52-37.
 "The judgment of the district court is therefore reversed and the case is remanded with directions that the writ of habeas corpus be issued, subject to the right of the state of Alabama to retry petitioner within a reasonable time." (Emphasis added.) Lokos, supra, at 1269.
It is apparent to us that, had the federal court had before it the additional psychiatric testimony contained in the depositions of the medical experts present in the record now before us, that court would not have been compelled to reach the conclusion of mental incompetence. Therefore, we are reluctant under the testimony presented in this record, to accept appellant's argument that he was denied the opportunity to cross-examine the witness at his former trial because of his alleged mental incompetency. *Page 826 
Appellant's objections, prior to the introduction of the testimony of Dr. Grubbs, appear as follows:
 "MR. WATKINS: We also had marked for identification State's Exhibit 5, which is a certified copy of the transcript of a previous trial of Mr. Lokos, and propose to put into evidence Dr. Grubbs' testimony therefrom and would withdraw it from the certified copy and put it in alone.
 "MR. COPLIN: And we would object because we do not have an opportunity to cross examine Mr. Grubbs and it denies our client the right to cross examine and the constitutional right to confront the witness against it [sic]."
. . . .
 "MR. WATKINS: I want to read the testimony of Dr. Grubbs from this transcript that we've certified.
"THE COURT: Any objection?
 "MR. COPLIN: Yes, sir. In order for it to be admissible it has to be the Court Reporter's transcript of the witness's testimony. She's testified that that is not hers: it is a copy."
Neither objection made reference to appellant's contention raised on appeal. Specific grounds of objection waive all grounds not specified, and the trial court will not be put in error on grounds not assigned. Franklin v. State, 357 So.2d 364
(Ala.Cr.App.), cert. denied, 357 So.2d 368 (Ala. 1978). Appellant's objection made reference only to his present attorney's inability to cross-examine Dr. Grubbs, an entirely different proposition from that in contention here.
Appellant's objection to Dr. Kimbrough's testimony is as follows:
 "MR. WATKINS: You may come down. Judge, we are now going to offer the testimony of Dr. Kimbrough from the certified transcript which was certified yesterday and shall put into evidence his death certificate, certified, showing that he is now dead.
 "MR. TRAEGER: We're going to object to that, Judge. This is what we were told that would only come up yesterday in rebuttal.
"MR. WATKINS: Well, that's what it is ........
"(Bench conference, off record.)
 "THE COURT: Ya'll have had access to the transcript of Dr. Kimbrough?
"MR. TRAEGER: Yes, sir."
. . . .
"THE COURT: And you offer at this time —
 "MR. WATKINS: To show the voluntariness of the statement of Mr. Lokos at the jail in Marengo County and to show his mental condition at that time for whatever value it would have to the court at subsequent times.
"THE COURT: Are there any objections?
"MR. TRAEGER: Yes, sir.
"THE COURT: What basis?
 "MR. TRAEGER: Judge, we're going to object to anything of Dr. Kimbrough, that they bring in on Dr. Kimbrough, at this time. We don't see any relevancy to it and we're going to object.
"MR. WATKINS: On the ground of relevance?
"THE COURT: Overruled.
. . . .
 "MR. WATKINS: Judge, at this time, we would like to offer the testimony of Dr. Cecil Kimbrough, who is now deceased and whose death we have previously proven in this court — From the transcript that has been previously admitted, or certified.
 "MR. TRAEGER: We're going to object. Same objection as before as to the transcript. And further we don't think there has been any prolonged or intimate contact shown by Dr. Kimbrough. And, further, Your Honor, we feel that Mr. Lokos would be violated and denied the right to confront all witnesses against him.
 "THE COURT: I overrule that objection and allow the testimony of Dr. Cecil Kimbrough to be read into evidence given at a previous trial; and the fact that Dr. Kimbrough is now deceased as shown to *Page 827 
the Court by a death certificate that has been admitted into evidence."
Again, appellant failed to raise the objection at trial which he presents here on appeal.
Finally, appellant's objection to the introduction of his prior testimony appears as below:
 "MR. WATKINS: We would, again, offer the testimony of Mr. Lokos in the February trial of 1964 in Sumter County.
 "MR. COPLIN: Your Honor, we would object that at the time this was made that Mr. Lokos was represented by Mr. John Drinkard, who also represented the other co-defendants in this particular case. He was denied effective defense counsel at that time because Mr. Drinkard represented two defendants in this case. Also, we would point the court's direction to the case of Lokos versus Walter Capps, a case arising out of the Fifth Circuit Court of Appeals as evidence to substantiate our point that Mr. Lokos was incompetent at the time of trial and at the time this particular statement was made.
"THE COURT: Overrule that objection."
We point out that appellant's testimony at the previous trial was merely cumulative of other evidence already argued before the court, as stated in part III above, and any potential error in its admission was harmless. Cassidy v. State, 369 So.2d 310
(Ala.Cr.App. 1979); McGhee v. State, 365 So.2d 116
(Ala.Cr.App.), cert. denied, 365 So.2d 123 (Ala. 1978). Appellant's contention concerning his mental competency and his former counsel's representation of an accomplice have been dealt with above.
 V
Appellant contends the trial court erred in ordering the appellant and State to exchange lists of witnesses prior to trial. However, for all the record reveals, this order may have been the product of agreement among the court, appellant, and the State. No objection to the court's order appears in the record, nor is there any indication that appellant indicated any reservation in complying with the court's order. Appellant cites no case or rule of procedure which takes this out of the general rule requiring that an appellant present to the trial court in some way the error upon which he bases a request for reversal in order to preserve the matter for consideration on appeal. Jones v. State, 387 So.2d 284 (Ala.Cr.App. 1980). We refuse to find reversible error on this ground under the present state of the record.
 VI
The trial court granted appellant's motion for change of venue and transferred the case from Sumter to Marengo County. Subsequently, appellant filed a second motion for change of venue, which the trial court denied. Appellant contends the court below erred to reversal in refusing to grant the second motion, in that his case had suffered the same widespread notoriety in Marengo County as it had in Sumter County.
The granting of a motion for change of venue is a matter within the sound discretion of the trial court. Speigner v.State, 367 So.2d 590 (Ala.Cr.App. 1978), cert. denied,367 So.2d 597 (Ala. 1979).
At the hearing on appellant's motion in Marengo County, appellant produced the testimony of Attorney J.M. Lowery, Jr. who stated appellant could not, in his view, receive a fair trial in Marengo County. As well, appellant introduced two newspaper articles which we have reviewed on appeal. The articles are identical in content. The account contained therein is purely factual in nature and contains no inflammatory or editorial comment on the topic. Coon v. State,380 So.2d 980 (Ala.Cr.App. 1979), affirmed, 380 So.2d 990 (Ala. 1980). We note also that the murder itself occurred in another county some eighteen years prior to the time of the instant trial which was held in Marengo County.
The introduction of newspaper articles alone, which merely demonstrate the existence of publicity, does not require a *Page 828 
change of venue. Anderson, supra; Speigner, supra; Dolvin v.State, 391 So.2d 666 (Ala.Cr.App. 1979), affirmed,391 So.2d 677 (Ala. 1980).
Without a demonstration of the existence of actual prejudice in the minds of the jurors, created by the notoriety of the case, a trial court will not be reversed for having refused a motion for change of venue. Our review of the record reveals no showing of actual prejudice such as to render it reasonably unlikely that appellant was unable to receive a fair and impartial trial. Dolvin, supra. The mere fact that jurors knew something of the case is insufficient to require a change of venue where the jurors have sworn that their superficial knowledge would not affect their verdict or deliberations.Anderson, supra.
The trial court asked the following question of the jury venire:
 "That indictment was returned the Spring Term of Court in Sumter County, Alabama, in 1964. Now, I would like to know how many of you on the jury panel has read about this case or heard it discussed. I don't want to know what you have heard or what you have heard discussed, but I would like to know how many of you have read about it or heard it discussed. If you would, please, raise your hand. When you raise your hand, I'll ask that you please stand up and let's take your names."
Only two jurors from the entire venire responded that what they had previously learned about the case would prejudice them in such a way as to prevent them from rendering a fair and impartial verdict. A third juror indicated she had a fixed opinion, but then stated she could render an impartial verdict. All three of these jurors were excused from serving. The remainder of the jury venire indicated that they had formed no preconceived opinion and that they would be able to come into the trial with an open mind.
The appellant has failed to present any evidence of inherently prejudicial publicity surrounding the instant trial which had so saturated the community as to prevent a fair and impartial trial. Considering the answers of the entire jury venire, we find the jury was impartial and capable of adhering to its sworn duty to base its verdict upon the evidence.Anderson, supra.
 VII
Appellant contends he was denied his right to a speedy trial in that the instant trial failed to take place within thirty days as directed by the federal court order which remanded the case for new trial. Appellant fails to point out, however, that the delay in trial was necessitated by the trial court's granting his first motion for change of venue and the subsequent rescheduling of the trial to comply with the change of venue.
A defendant cannot claim a constitutional violation of his right to a speedy trial where the delay is caused by his actions. Davis v. State, 387 So.2d 268 (Ala.Cr.App.), cert.denied, 387 So.2d 274 (Ala. 1980). There is no merit in appellant's contention in this regard.
 VIII
Appellant argues the trial court erred in allowing into evidence a photographic copy of a transcript of an earlier trial. He asserts that only the original certified copy of the transcript was properly admissible.
The copy of the transcript the State sought to introduce was certified by the acting Deputy Clerk of the Supreme Court of Alabama to be a full, true, and correct copy of the pertinent testimony. A transcript from the Supreme Court certified by the clerk of that court is an adequate and proper authentication of the transcript of the testimony for which it is offered. Howardv. State, 49 Ala. App. 548, 274 So.2d 104 (1973). The record also reflects that appellant waived at trial any request that the original court reporter authenticate the copy of the transcript. There was no error in the admission of the transcript in this form. *Page 829 
 IX
Appellant contends the trial court erred in refusing to give his original written instruction charging the jury on reasonable doubt. After the court concluded its oral charge, the appellant made the following objection:
 "MR. COPLIN: We object to the Court's charge concerning reasonable doubt. A reasonable doubt means the need to reach a subjective state of mere certitude of the guilt of the accused. Recite for the Court the case of Jackson Versus Virginia, 443 U.S. 307; 99 Supreme Court 2781, 61 Lawyer's Edition 2d 560, 1979."
The objection quoted only a small portion of the lengthy written charge which covered numerous propositions of law. As well, the record shows that the portion of the charge quoted was a misstatement of the law, as well as the original written charge, in that appellant's counsel substituted the phrase "mere certitude" for the phrase "near certitude." Finally, the trial court's oral charge fully and adequately covered the topic of reasonable doubt. There was no error in the trial court's ruling. Hope v. State, 390 So.2d 1077 (Ala.Cr.App.),cert. denied, 390 So.2d 1083 (Ala. 1980). Moreover, appellant did not make the trial court aware that he was excepting to the court's refusal to give a specific written charge, and his misstatement of a small portion of the original written charge could not have given the court notice of the same. Jones v.State, 412 So.2d 1247 (Ala.Cr.App. 1982). Neither did his exception raise sufficient supporting grounds to justify giving the charge. Jones v. State, 412 So.2d 1270 (Ala.Cr.App. 1982).
 X
During the testimony of the victim's wife, in which she described the injuries she received when she and her deceased husband were thrown into the well on the night of the murder, appellant made the following objection:
"Q What happened to you as you fell into that well?
"A Flesh was torn off my leg.
 "Q Describe how it was done and the condition of you leg later on.
 "MR. COPLIN: Your Honor, we're going to object to this. It's not relevant.
 "MR. WATKINS: It shows that — part of the res gestae.
"THE COURT: Overruled."
The above evidence was properly admissible as part of the res gestae. All that transpired at the time of the difficulty is generally admissible as part of the res gestae. Cook v. State,269 Ala. 646, 115 So.2d 101 (1959); Curry v. State,341 So.2d 972 (Ala.Cr.App. 1976), cert. denied, 341 So.2d 974 (Ala. 1977).
 XI
Appellant alleges lay witnesses without sufficient contacts with appellant to express an opinion were erroneously allowed to testify to appellant's sanity. A lay witness may give his opinion as to the sanity of another person, where he has had adequate opportunity to observe the person and has not observed any abnormal or irrational acts. Kennedy v. State,371 So.2d 464 (Ala.Cr.App. 1979). Whether the witness has acquired such a qualifying knowledge of the appellant is a matter within the sound discretion of the trial judge. Carroll v. State,370 So.2d 749 (Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala. 1979). In reviewing the testimony of those lay witnesses expressing their view as to appellant's "normality" during the time surrounding the commission of the crime, we do not find that the trial judge abused his discretion in determining that such witnesses had the required qualifications to testify as to appellant's sanity. All of these witnesses were questioned as to their contacts and association with appellant and as to their opportunity to observe him. Their answers demonstrated sufficient contacts with appellant to justify admission of their testimony.
 XII
Appellant asserts the trial court erroneously admitted into evidence, over his *Page 830 
objection, evidence of unrelated, separate crimes. During the testimony of Clarence Coon the following occurred:
"Q What did you do?
"A Robbed a hardware store.
 "MR. COPLIN: We're going to object to that, Your Honor.
 "MR. WATKINS: Judge, this shows pattern, it shows how he acted; the whole pattern up to the crime.
"MR. COPLIN: It's not relevant, Your Honor, at all.
"THE COURT: Overrule that objection.
MR. COPLIN: We except."
. . . .
"Q What did you do there?
"A That night they went out to rob some people, I —
"MR. COPLIN: We're going to object again, Your Honor.
 "THE COURT: Approach the bench, please. (Bench conference — off record)
 "THE COURT: Ladies and Gentlemen, the evidence you just heard is not evidence before you. I'm going to exclude that from the jury and you are instructed to disregard anything concerning any other crime. I'm specifically instructing you to disregard that testimony and not to consider it. Is there anyone on the jury who thinks that they can't put it out of their mind and not be able to consider it. You are not concerned with any crime in any other place, in any other time, or any other charges. The only thing that is charged here is the charges in the indictment. Is there anyone on the jury panel that thinks that they will not be able to put that evidence aside? All of you think that you will be able to base it strictly on the evidence in this particular case? Thank you. Let the record show that all affirmatively said that they could.
 "MR. COPLIN: We make a Motion for a Mistrial, Your Honor.
"THE COURT: Overrule the motion. Let's go ahead."
On both occasions, appellant's objection came too late, and was not followed by a motion to exclude. Wright v. State,380 So.2d 398 (Ala.Cr.App. 1980). Additionally, the trial judge on his own motion excluded the evidence and strongly instructed the jury to disregard it. All jurors indicated they would be able to disregard the evidence in accordance with the court's instructions.
The second incident complained of involved evidence concerning the burglary of a neighboring house, on the same night the victim's house was burglarized and the victim murdered. This evidence was properly admissible as proving intent and method, as well as being part of one continuous criminal transaction. Terry v. State, 397 So.2d 217
(Ala.Cr.App.), cert. denied, 397 So.2d 223 (Ala. 1981).
Appellant also contends evidence of other crimes contained in appellant's written confession was improperly admitted. The record reflects the following:
 "On or about the 7th day of December, we left our camp on the river and walked to a place North of Buckholts and stole a Pontiac and then went back to the camp and picked up Butch at the camp. We had left him at the camp while Gerald, Edwards, and I walked up there and took the Pontiac. We then went to Cameron, Texas and parked near the —
"MR. TRAEGER: Judge, we're going to
. . .
 "THE COURT: Mr. Watkins, this statement is not pertinent, that's why I wanted to read a copy of it; all of it is not admissible.
"MR. WATKINS:
"Q All right, sir. Tell —
 "MR. TRAEGER: Your Honor, first we move to exclude all of that.
 "THE COURT: All right, ladies and gentlemen that portion of the statement that has been introduced is excluded and is not for your consideration, about the camp in Texas and what not.
"MR. TRAEGER: Your Honor, we move for a mistrial.
 "THE COURT: Overrule your Motion. Ladies and Gentlemen, I'm instructing you that that evidence is not before you *Page 831 
and that is withdrawn from your consideration about making a camp out in Texas and what they did at that time. The only thing we are concerned with is the trial in this case of the issues contained in the indictment wherein the defendant is alleged to have murdered Leon Culpepper and anything else is not evidence before you. Now, can ya'll put that out of your minds and not consider what was just said? We're going to get down to the pertinent part of the testimony. Is there anyone who cannot? All right, overrule your Motion for a mistrial."
Again, appellant failed to object before the questioned portion of the transcript was read, and again the trial court on its own motion excluded the evidence and instructed the jury to disregard it. Chillous v. State, 405 So.2d 58 (Ala.Cr.App. 1981).
 XIII
Appellant's final contention is that the trial court erred in refusing to allow into evidence a deposition by Dr. Glenn Bacon. However, Dr. Bacon was present at trial, was available to testify, and in fact did testify. Therefore, the requirements of Anderson, supra, were not met, and the trial court's ruling was proper. Also, appellant's objection to questions pertaining to information potentially obtained from Dr. Bacon's deposition, rather than hospital records, was addressed to the form of the hypothetical questions, and not to the source or nature of the information contained therein. Specific grounds of objection waive all grounds not specified.Ward v. State, 376 So.2d 1112 (Ala.Cr.App.), cert. denied,376 So.2d 1117 (Ala. 1979).
No error harmful to the substantial rights of appellant having been demonstrated, this case is affirmed.
AFFIRMED.
All the Judges concur.