* Note from the Reporter of Decisions: On June 26, 1992, the Court of Criminal Appeals affirmed, and on August 21, 1992, it denied rehearing. Those actions appear on tables of "no opinion" decisions. See 609 So.2d 456 and 617 So.2d 705. The defendant petitioned for certiorari review in the Alabama Supreme Court, which, on November 9, 1992, without opinion (docket 1911878) remanded the case to the Court of Criminal Appeals for further proceedings.
 ON REMAND FROM THE ALABAMA SUPREME COURT
This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
The appellant, Charles J. Greene, was charged with the offense of criminal trespass in the third degree. His case was tried in the municipal court of the City of Montgomery and he was found guilty. The appellant was fined $150 and court costs. He appealed to the circuit court for a trial de novo. The circuit court upheld the conviction and fine. The appellant filed a motion for a new trial and the circuit court held a hearing on that motion. The circuit court denied the appellant's motion for new trial.
The evidence presented by the City at trial tended to show that on March 19, 1990, the appellant was fired from his job at Auto Zone, an automobile parts store in Montgomery, *Page 796 
Alabama. Paul Smith, the area advisor for Auto Zone stores testified that the appellant was told not to come into the store again. Other witnesses also testified at trial that the appellant had been told to stay out of the store. Later, the appellant was seen in the store on several occasions. There was trial testimony that the appellant was making it difficult for other store employees to do their jobs.
On April 3, 1990, the appellant was charged with the offense of criminal trespass in the third degree. The appellant was accused of entering the premises of the Auto Zone store on Fairview Avenue in Montgomery after being told not to reenter the premises.
 I
The appellant contends that the presence of the bailiff in the jury room during jury deliberations warrants a new trial. Specifically, the appellant argues that the bailiff entered the jury room and remained there for a period of 10 to 20 minutes. He alleges in his brief to this court that his attorney made it clear to the trial court that if the bailiff was not made to come out of the jury room, she would move for a mistrial. However, the appellant was unclear whether a formal motion was made. The appellant did not know the name of the bailiff and failed to bring the bailiff before the court, despite the fact that the judge gave the appellant additional time to produce the bailiff. There was testimony by the appellant's attorney, who stated that the bailiff was probably in the jury room for 5 to 10 minutes. The appellant's attorney testified that she remembered one of the jurors knocking on the door with a question or to tell the court that the verdict was ready. The attorney testified further that no motion for a mistrial or "anything like that" was made, although we note that a motion for a new trial was filed.
In Ray v. State, 527 So.2d 166, 168 (Ala.Crim.App. 1987), a conversation between the jury foreman and the bailiff took place during jury deliberations. Although defense counsel was aware of the conversation when it occurred, no objection was made until the motion for a new trial was made. This court held that the issue was not preserved for our review because the objection was not timely.
Although the appellant claims that an objection was made at trial to the bailiff's presence in the room during jury deliberations, the record does not support this assertion. Further, defense counsel stated that no objection was made on this issue at trial. Since the appellant failed to object in a timely manner, this issue is not preserved for appellate review. Ray.
 II
The appellant claims that the trial court refused to permit him to question the prosecuting attorney, Patricia Kelley, at the hearing on the motion for a new trial and this refusal constituted a denial of his right to a full and fair hearing on this motion. It is clear from the record that the appellant's claim as to this issue is totally without merit. The trial court did not require Kelley to take the stand at least "until the City has an opportunity to have another lawyer." However, the court did permit the appellant to question Kelley, as the following illustrates:
 "THE COURT: I will hear the testimony. I will not require her to testify; but I will hear testimony from them. I will not require her until the City has an opportunity to have another lawyer; but I will permit you to call those two witnesses.
 "MR. GREENE: In order for me to be able to fully question the two witnesses just mentioned, it would be necessary to question Patricia Kelley herself to provide the basis for that.
"THE COURT: What do you want to ask her?
"MR. GREENE: First, did she sign this?
"THE COURT: Did you sign it?
 "MS. KELLEY: Yes, sir. You have ruled on those grounds.
 "THE COURT: She signed it and the Court takes judicial knowledge that it was written and prepared by Ms. Kelley. Anything further you want to ask?
 "MR. GREENE: I would like to introduce into evidence the affidavit of Moe Taylor. I will authenticate that.
"THE COURT: Who is Moe Taylor? *Page 797 
"MR. GREENE: He was another witness at trial.
 "THE COURT: What does this have to do with the correctness of the motion?
 "MR. GREENE: Moe Taylor's affidavit will state that the grounds mentioned in this motion to continue are not what they are.
 "THE COURT: Do you have any objection to him offering that?
 "MS. KELLEY: No, sir. It has been filed with his motion.
 "THE COURT: That is admitted. Anything else you want to ask Ms. Kelley? You say you can't intelligently question these witnesses about their being sick until you ask her questions. I'm trying to get that tended to.
 "MR. GREENE: Did you make a telephone call to Paul Smith at Fairview Street on the date of the trial?
 "THE COURT: I don't see that that has anything to do with these two witnesses. Call the witnesses referred to in this motion, the one that was bedridden with pneumonia, and the other one that was out of town. Who was the one bedridden?"
As evidenced by the above dialogue, this issue is without merit.
 III
The appellant argues that the trial court erred in overruling his motion for a new trial because, he says, it disregarded the evidence of presumptive prejudice to the appellant caused by the bailiff's presence in the jury room. We have addressed the merits of this issue in part I of the opinion. The appellant failed to object at trial or to move for a mistrial. The appellant failed to preserve this issue for appellate review.Ray.
 IV
The appellant contends that the trial judge failed to act on his motion to correct and supplement the record on appeal and the trial court's failure to allow the record on appeal to be supplemented violated his right to procedural due process. This case has a long and tortured history, which will be documented below.
On September 24, 1991, the appellant filed a motion in the Court of Criminal Appeals to correct and supplement the record on appeal. On September 26, 1991, the Court of Criminal Appeals ordered the appellant to file a motion in circuit court for a corrected and supplemental record. The appellant complied with this order by filing the motion on October 8, 1991. On January 23, 1992, this court ordered the trial court either to certify the record as accurate and complete or if the trial court determined that the record was incomplete, to note that a corrected record be filed. On February 4, 1992, pursuant to the order of the Court of Criminal Appeals, the trial court, after reviewing the record, issued an order stating that the record on appeal did, in fact, disclose what occurred in the trial court. On June 26, 1992, the judgment was affirmed by unpublished memorandum. On November 10, 1992, the Alabama Supreme Court remanded this cause to this court for further proceedings. On November 12, 1992, this court ordered that "a supplemental record containing all documents necessary to make record complete be filed within 7 days of this order." Supplemental records were filed on November 16, 1992, December 22, 1992, and on February 3, 1993. Several hearings were held concerning the correction of the record on appeal.
The trial court granted the appellant's motion to correct the record and ordered that all matters concerning the appellant's case be submitted to this court, including the audiotape of the hearing on the motion for new trial. The court reporter testified that the record is complete and that it accurately reflects the proceedings in the trial court and that everything included in the record had been submitted to this court. The trial court granted every request by the appellant to correct the record and repeatedly asked the appellant what he wished to have corrected in the record. However, the court indicated it could not create a record concerning matters that did not occur at the trial or during the hearing on the motion for a new trial.
The appellant in his brief on appeal again argues that the record is inaccurate, but he does not specify what is incorrect about the *Page 798 
record or offer any corrections. The trial court stated that everything material to either party is, in fact, included in the record and that nothing material to either party has been omitted from the record and that nothing material was misstated therein. The trial court's action in this matter was more than sufficient. In fact, the trial court extended every consideration to the appellant, who, although not versed in the law chose to represent himself. There is no merit to this issue.
 V
The appellant's fifth issue is whether the consideration of this appeal based upon the present record on appeal is in violation of the appellant's right to procedural due process. We addressed the merits of this argument in part IV of this opinion. The contention is without merit.
 VI
The appellant filed a lawsuit in federal court alleging that the record on appeal in this case was incomplete. The appellant contends that the trial judge should have recused himself once the lawsuit was filed because the trial judge was a party to the lawsuit. The lawsuit has subsequently been dismissed.
 "A motion to recuse must be addressed to the judge challenged. The ruling of that judge on the motion will not be reviewed on appeal in the absence of clear evidence of prejudice or bias. Slinker v. State, 344 So.2d 1264
(Ala.Crim.App. 1977). The prejudice or bias against the appellant required to disqualify the judge must be of a personal nature, as opposed to a judicial bias. Seibold v. State, 382 So.2d 1141
(Ala.Crim.App. 1979), cert. denied, 382 So.2d 1146 (Ala. 1980); Pannell v. State, 356 So.2d 219
(Ala.Crim.App. 1977), cert. denied, 356 So.2d 222 (Ala. 1978); Johnson v. State, 335 So.2d 663, (Ala.Crim.App.), cert. denied, 335 So.2d 678 (Ala. 1976), cert. denied, 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629
(1976); Slinker, supra, Canon 3 A(5), Alabama Canons of Judicial Ethics.
 "The words bias and prejudice, as used in this context, refer to the mental attitude or disposition of the judge toward the defendant himself, and not to the judge's views regarding the crime with which the defendant is charged. In re White, 53 Ala. App. 377, 300 So.2d 420, cert. denied, 293 Ala. 778, 300 So.2d 439 (1974). . . ."
Lokos v. State, 434 So.2d 818, 822 (Ala.Crim.App. 1982).
The appellant has failed to demonstrate to this court that the trial judge was prejudiced against him. In fact, the record shows that the trial court "bent over backwards" to accommodate the appellant concerning the correction of the record on appeal. As we discussed in part IV above, the trial court ordered that everything in the record be submitted to this court and told the appellant that it would correct anything in the record that needed correcting but that it would not create a record concerning matters that did not occur at trial. Further, the trial court was in the best position to correct the record since it presided over the appellant's trial and would have been aware of what occurred during the trial. This argument lacks merit.
 VII
The appellant contends that the trial court engaged in ex parte communications with the prosecutor because the trial court asked the prosecutor to "get [it] some law on what the law says about speculating on a verdict on things of this nature." In response, the prosecutor wrote the following letter to the trial court:
 "Enclosed please find a couple of cases I have found, which indicate that a defendant in a criminal case must object to circumstances regarding the jury and may not assert the same for the first time in a Motion for New Trial.
 "Please consider this case law in making a determination on Defendant's Motion for New Trial in the above styled cause."
(S.R. #1, 8.) The request for relevant law by the trial court and the response by the prosecutor do not constitute an ex parte communication. *Page 799 
 VIII
The appellant contends that his motion for a new trial should have been granted because, he said, two witnesses in this case discussed this case in front of the jury. Both of these witnesses offered affidavits in which they stated that they did not talk about the case to each other in the presence of the jury. The trial court did not err by refusing to grant a new trial on this ground.
This case is affirmed.
AFFIRMED.
All the Judges concur.